SNYDER COMMUNICATIONS,
Appellant,

v.

Josefina MAGANA, et al., Appellees.

No. 13–02–076–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Nov. 27, 2002.

Joe B. Harrison, Stacy R. Obenhaus, Gardere Wynne Sewell, Dallas, for appellant.

Bruce W. Hodge, Lisa M. Mount, Hodge, James & Hernandez, Harlingen, Thomas G. Rayfield, Law Offices of Thomas G. Rayfield, McAllen, for appellees.

Before Chief Justice VALDEZ and Justices YAÑEZ and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

This is an interlocutory appeal from the trial court's order certifying a class and adopting a trial plan.[1] Appellees Josefina Magaña, Maria D. Escalon, Elvira Lorena Quiroga, Maria Luz Figueroa, Maria Isabel Lopez, Donna M. Rodriguez, and Nora Linda Dominguez sued their former employer; Snyder Communications, L.P., appellant ("Snyder"), for breach of contract and fraud. Appellees charge that Snyder failed to pay compensation due them pursuant to written, contractual representations made by Snyder at the time of appellees' employment. The compensation scheme provided that Snyder sales associates would receive commissions for each valid "Letter of Authority" they obtained from residential consumers to transfer long distance carrier service to AT & T,

---

1. A party may challenge by interlocutory appeal to the court of appeals matters pertaining to the granting or denial of class certification. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.2002); *Cent. Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 607 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.).

with whom Snyder had a contractual relationship, and bonuses based on productivity.

Snyder contends on appeal that the trial court erred when it certified the class because: (1) the trial court failed to go beyond the pleadings in assessing the commonality required for a properly certified class action and in determining that common issues predominated over individual issues; (2) the trial court erroneously concluded that common issues predominated over individual issues and did not determine that a class action was a superior method for fair and efficient resolution of the claims; (3) the named plaintiffs will not fairly and adequately represent the interests of the class; and (4) the trial plan adopted by the trial court is inadequate in that it acknowledges that trial of the named plaintiffs' claims might not resolve the claims of the remaining class, it neither accounts for the defenses raised by Snyder nor includes a method of resolving Snyder's defensive issues, and it does not specify a formula or similar method for establishing proof of liability and damages. We affirm.

## I. PROCEDURAL HISTORY

Appellees originally filed suit individually against Snyder on June 6, 2000. Snyder answered with a general denial on June 29, 2000. Appellees amended to assert a class action on April 3, 2001, alleging that: (1) the proposed class, consisting of persons who were employed by Snyder in the capacity of sales associate on or after April 3, 1997 and who had commissions denied in whole or in part, was so numerous as to make joinder of all members impractical ("numerosity"); (2) common questions of

law or fact affected the class, including a common course of conduct by Snyder in fraudulently inducing appellees and unnamed class members to enter into employment contracts and in making material and false representations to each class member regarding commissions and bonuses ("commonality"); (3) the claims of the named plaintiffs were typical of the class in that all class members were employed as sales associates on a commission basis and all were denied their commission in whole or in part, so that the claims of the unnamed class members arose from the same course of conduct and misrepresentations as the claims of the named plaintiffs ("typicality"); (4) the named plaintiffs would fairly and adequately represent the interest of the class in that they were members of the class, they had expressed interest in representing the class, they had hired experienced litigation counsel who was willing to advance the costs of notice to the class, and they had no interests adverse to other members of the class ("adequacy of representation"); and (5) common questions of law or fact in the claimed fraudulent inducement and misrepresentations regarding commissions and bonuses predominated over any questions affecting only individual members ("predominance"), making a class action the superior method of resolving the claims ("superiority").

Snyder filed an amended answer on April 6, 2001 and interposed eleven "specific denials" denying each of the facts alleged in the amended petition, including the class-action allegations; three special exceptions; twenty affirmative defenses;[2] and a general denial. On April 9, 2001, appellees filed their motion for certifica-

---

**2.** Snyder's affirmative defenses include statute of limitations, laches, statute of frauds, payment, failure to mitigate, justification, mutual mistake, offset, ratification, rescission, criminal acts, contractual contingency, waiver, release, estoppel, accord and satisfaction, contributory negligence, failure of consideration, fraud, and illegality.

tion, asserting that certification of the class was appropriate on numerosity, commonality, typicality, adequacy of representation, predominance, and superiority grounds. They submitted a proposed trial plan that same date.

Snyder filed its opposition to class certification on April 18, 2001, objecting on numerosity, commonality, typicality, adequacy of representation, predominance, and superiority grounds. Snyder did not object to appellees' proposed trial plan, nor did it submit its own proposed trial plan. It did file motions for summary judgment on April 17 and April 18, 2001. Also on April 18, 2001, appellees filed an amended certification motion. At the certification hearing on April 19, 2001, appellees introduced deposition testimony and documents in support of its motion. Snyder introduced no material. The court entered the challenged certification order and trial plan on January 3, 2002. This interlocutory appeal ensued.

## II. CLASS ACTIONS IN TEXAS

### A. The Nature of Class Actions

■ The class action serves as a mechanism to eliminate or reduce the threat of repetitive litigation, prevent inconsistent resolution of similar cases, and provide a means of redress for individual claims that are too small to make independent actions economically viable. *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 452 (Tex.2000). The principal purpose of the class-action device is efficiency and economy of litigation. *See id.* (discussing the origins and general design of the class-action device). When properly used, a class action saves the court's and the parties' resources by allowing class-wide issues to be tried in an economical fashion. *See id.* (citing *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

Thus, class actions furnish an efficient means for numerous claimants with a common complaint to obtain a remedy where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages. *Gen. Motors Corp. v. Bloyed,* 916 S.W.2d 949, 952 (Tex.1996) (citing *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)). Class actions also facilitate the spreading of litigation costs among numerous litigants with similar claims. *Bloyed,* 916 S.W.2d at 953 (citing *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 403, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)).

■ However, the class-action format must not unduly restrict a party from presenting viable claims or defenses without that party's consent. *Southwestern Ref. Co., Inc. v. Bernal,* 22 S.W.3d 425, 435–36 (Tex.2000) (citing TEX.R. CIV. P. 815 and TEX. GOV'T CODE ANN. § 22.004(a)) (providing that state procedural rules may not abridge, enlarge, or modify the substantive rights of a litigant). Accordingly, the class-action device may not alter the parties' burden of proof, right to a jury trial, or substantive prerequisites to recovery. *Bernal,* 22 S.W.3d at 437.

■ A trial court's decision to certify a class can have "staggering economic consequences." *Henry Schein, Inc. v. Stromboe,* 46 Tex.Sup.Ct. J. 103, —— S.W.3d ——, ——, 2002 WL 31426407, at *19 (October 31, 2002) (O'Neill, J., dissenting). Thus, even though it is an efficient device, the right to litigate a claim as a class action is not unfettered. Rule 42 of the Texas Rules of Civil Procedure provides that a trial court may certify a class action only if the plaintiff satisfies the requirements of the rule. TEX.R. CIV. P. 42; *Sheldon,* 22 S.W.3d at 452–53 (citing *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647 (Tex.App.-Houston [14th Dist.] 1995, writ

dism'd w.o.j.), *mandamus denied*, 951 S.W.2d 394 (Tex.1997)).

### B. The Statutory Requirements for Certification

A member of a class may sue or be sued as a representative party of the class only if all of the following requirements of Texas Rule of Civil Procedure 42(a) are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Tex.R. Civ. P. 42(a). Additionally, at least one of the enumerated requirements set forth in rule 42(b) must be met: (1) adjudication of separate actions would create a risk of inconsistent results or impairment of the interests of other members not parties to the adjudication; (2) the defendant has acted or refused to act on grounds applicable to the entire class; (3) the object of the action is the adjudication of claims affecting specific property involved in the action; or (4) common questions of law or fact predominate over any questions affecting only individual members, and a class action is the superior method of fairly and efficiently adjudicating the controversy. Tex.R. Civ. P. 42(b).

■ Rule 42 is patterned after its federal counterpart. *Compare* Fed.R.Civ.P. 23 *with* Tex.R. Civ. P. 42. Consequently, federal decisions and authorities interpreting current federal class-action requirements are persuasive authority in applying rule 42. Tex.R. Civ. P. 42; *Bernal*, 22 S.W.3d at 433.

### C. The Class Certification Record

■ In making its class certification decision, a trial court may consider the pleadings and other material in the record along with the evidence presented at the hearing. *Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Comp. Self-Ins. Fund*, 886 S.W.2d 470, 474 (Tex.App.-Austin 1994, writ dism'd w.o.j.). The materials on which a trial court bases its certification ruling need not be in the form of evidence that would be admissible at trial. *Texas Commerce Bank Nat'l Ass'n v. Wood*, 994 S.W.2d 796, 801 (Tex.App.-Corpus Christi 1999, pet. dism'd w.o.j.) (op. on reh'g). A requirement that materials presented in the context of a class certification hearing be in the form of admissible evidence would call for the trial court to delve into the merits of the claims, which is not appropriate when determining class certification. *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 615 (Tex.App.-Texarkana 1995, writ dism'd); *see State Farm Mut. Auto. Ins. Co. v. Lopez*, 46 Tex.Sup.Ct. J. 129, —— S.W.3d ——, ——, 2002 WL 31426668, at *1 (October 31, 2002) (per curiam) ("*Lopez II*") (reaffirming that Texas law "does not require a trial court to evaluate the merits of the plaintiffs' claims.").

### III. THE EVOLVING STANDARD OF APPELLATE REVIEW OF CERTIFICATION ORDERS

Appellate review of class certification rulings historically has been limited to determining whether the trial court abused its discretion. *Tana Oil & Gas Corp. v. Bates*, 978 S.W.2d 735, 740 (Tex.App.-Austin 1998, no pet.); *Vinson v. Texas Commerce Bank–Houston, N.A.*, 880 S.W.2d 820, 823 (Tex.App.-Dallas 1994, no writ). However, the supreme court has decried the practice of certifying class actions without conducting the proper analysis into each requirement of rule 42, in particular the predominance requirement of section (b)(4) of the rule. *Bernal*, 22 S.W.3d

at 435. Specifically, the *Bernal* court rejected a "certify now and worry later" approach and mandated that trial courts perform a "rigorous analysis" to determine whether the prerequisites to certification have been met before certifying a class. *Id.* at 434–35.

Snyder contends that the supreme court's requirement in *Bernal* that a trial court perform a "rigorous analysis" strictly circumscribes the deference with which appellate courts approach a trial court's certification order. *Id.* at 435. Snyder's interpretation of the supreme court's exhortation that a cautious approach to class certification is essential is that the supreme court "virtually established a presumption against class certification" and, therefore, appellate courts no longer may view the evidence in the light most favorable to the trial court's certification findings or indulge every presumption in favor of the court's ruling.

■ By advocating abandonment of the long-standing deferential review of a trial court's decision as to class certification and suggesting that there is now a "presumption against class certification," Snyder effectively asserts that *Bernal* modified the appellate standard of review in the class-action context to the point of eliminating a deferential abuse-of-discretion standard. In considering these propositions, we are mindful of the use of the term "rigorous analysis" in federal jurisprudence from which *Bernal* adopted the phrase, the flexibility conferred on the trial court by rule 42(c) to respond to developments in the litigation, the entirety of the supreme court's discussion in *Bernal*, and the supreme court's recent pronouncements in *Schein,* —— S.W.3d at —— – ——, 2002 WL 31426407, at *10–11.[3]

We first note that the United States Supreme Court has long required federal district courts to conduct a "rigorous analysis" into whether the prerequisites of rule 23 are met before certifying a class. FED. R.CIV.P. 23; *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364. Nonetheless, a federal district court exercises broad discretion in deciding whether to certify a class. *See Cross v. Nat'l Trust Life Ins. Co.,* 553 F.2d 1026, 1029 (6th Cir.1977) ("A district court has broad discretion in determining whether a particular case may proceed as a class action so long as it applies the criteria of rule 23 correctly."). In federal class-action cases applying rule 23, the term "rigorous analysis" does not mean that a reviewing court must apply a less deferential standard of review than abuse of discretion, but rather that the trial court must exercise its discretion within the framework of the rule. FED.R.CIV.P. 23; *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). We do not read *Bernal's* use of the term "rigorous analysis" any differently.

■ Further, while acknowledging the concerns created by the class-action landscape before *Bernal,* we also must recognize the rationale behind the inherent flexibility of rule 42 and the traditional application of the abuse-of-discretion standard to class certification cases. *Nat'l Western Life Ins. Co. v. Rowe,* 86 S.W.3d 285, 293–94 (Tex.App.-Austin 2002, pet. filed). The trial court in a class action remains charged with the duty of actively

---

**3.** The supreme court only has jurisdiction to review a court of appeals' decision on an interlocutory class-action appeal when there is disagreement among the justices of the court of appeals on a material question of law or the court of appeals' decision conflicts with a prior decision of another court of appeals or of the supreme court. TEX. GOV'T CODE ANN. §§ 22.225(c) (Vernon (1988)); *Henry Schein, Inc. v. Stromboe,* 46 Tex.Sup.Ct. J. 103, —— S.W.3d ——, ——, 2002 WL 31426407, at *8 (October 31, 2002).

policing the proceedings and guarding the class interests. Tex.R. Civ. P. 42(c); *see Bloyed,* 916 S.W.2d at 954 (discussing the extraordinary nature of class-action litigation, the protections required for absent class members, and the trial court's departure from the detached role ordinarily assumed in other proceedings). Accordingly, the terms of rule 42 itself afford the trial court considerable authority and discretion in defining the class, determining whether to grant or deny class certification, and in decertifying or modifying the class if necessary as the case develops. *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 408 (Tex. 2000).[4] Likewise, the abuse-of-discretion standard accords to the trial court the deference appropriate to its unique and particular responsibilities in class certification actions. *See Bloyed,* 916 S.W.2d at 954.

■ We do not read *Bernal* as modifying the abuse-of-discretion standard of review applicable to our analysis of class certification orders. *Bernal* did not suggest that reviewing courts should accord a lesser degree of deference to a trial court's class certification decision than to a decision subject to abuse-of-discretion review in any other context. Nor do we read *Bernal's* admonition of the need for a "cautious approach" as establishing a *de facto* presumption against certification, but rather simply as recognition of the fact that the trial court must remain mindful of the necessity of conforming with the requirements of rule 42 in determining class certification questions. *Bernal,* 22 S.W.3d at 435. In fact, *Bernal* reaffirmed that trial courts continue to enjoy discretion in making class certification decisions. *Id.* at 439 ("We hold that the trial court's certification order was an abuse of discretion because common issues do not predominate."). Thus, we conclude that a trial court retains after *Bernal* both the duty and the broad discretion to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties; however, this discretion is not unlimited but, rather, is curbed by the constraints created by rule 42. Tex.R. Civ. P. 42; *see Gulf Oil,* 452 U.S. at 100, 101 S.Ct. 2193 (interpreting limitations on the exercise of discretion by rule 23).

The "favorable light" analytical construct, under which we view the materials presented at a certification hearing in the light most favorable to the trial court's certification order and entertain every presumption that favors the court's conclusions, has been applied in abuse-of-discretion reviews of class certification cases since at least 1983. *Parks v. U.S. Home Corp.,* 652 S.W.2d 479, 485 (Tex.App.-Houston [1st Dist.] 1983, writ dism'd w.o.j.).[5] The supreme court impliedly crit-

---

4. Of course, while the flexibility of class-action procedural rules enhances the usefulness of the class-action device, actual, not presumed, conformance remains indispensable. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (interpreting rule 23). Courts must be mindful that the text of class-action procedural rules "limits judicial inventiveness." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Southwestern Ref. Co., Inc. v. Bernal,* 22 S.W.3d 425, 435 (Tex. 2000); *see Gen. Motors Corp. v. Bloyed,* 916 S.W.2d 949, 954 (Tex.1996) (emphasizing

"the importance of the trial court's obligation to determine that the protective requirements of Texas Rule 42 are met").

5. Intermediate appellate courts throughout Texas have applied the "favorable light" construct in reviewing class certification orders. *See, e.g., Vinson v. Texas Commerce Bank–Houston Nat'l Ass'n,* 880 S.W.2d 820, 823 (Tex.App.-Dallas 1994, no writ); *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 371–72 (Tex.App.-El Paso 1993, no writ); *Angeles/Quinoco Sec. Corp. v. Collison,* 841 S.W.2d 511, 512 (Tex.App.-Houston [14th Dist] 1992,

icized this "favorable light" construct when it rejected in *Bernal* a·"certify now and worry later" approach but did not explicitly mandate its abandonment. *Bernal,* 22 S.W.3d at 435. After submission of this case on interlocutory appeal, the supreme court expressly rejected the use of the "favorable light" construct in class certification reviews. *Schein,* —— S.W.3d at —— —— ——, 2002 WL 31426407, at *10–11. The *Schein* court held that the "favorable light" construct, both as stated and as applied by the court of appeals below in its standard of review, conflicted with *Bernal* and invoked the supreme court's jurisdiction to review the court of appeals' decision on Schein's interlocutory appeal. *Id.* at ——, 2002 WL 31426407, at *11. The *Schein* court acknowledged that in *Bernal*

it had "expressly stated that the trial court's decision to certify a class was to be reviewed for an abuse of discretion." *Id.* It confirmed that "[a] trial court has discretion to rule on class certification issues." *Id.* However, the *Schein* court went on to hold that only "some of [the trial court's] determinations—like those based on its assessment of the credibility of witnesses" must be "given the benefit of the doubt" [6] and noted that the "trial court's exercise of discretion cannot be supported by every presumption that can be made in its favor." *Id.* [7]

■■■ Accordingly, we no longer may employ the "favorable light" construct in our review of a trial court's exercise of discretion in making class certification decisions.[8] Further, we must give "the bene-

---

no writ); *Adams v. Reagan,* 791 S.W.2d 284, 287 (Tex.App.-Fort Worth 1990, no writ). The "favorable light" construct also has been used in reviewing other trial court actions under an abuse-of-discretion standard. *See, e.g., Thedford v. White,* 37 S.W.3d 494, 496–97 (Tex.App.-Tyler 2000, no pet.) (guardianship case); *State ex rel. Texas Dep't of Mental Health & Mental Retardation v. Ellison,* 914 S.W.2d 679, 682 (Tex.App.-Austin 1996, no writ) (guardianship case); *Velez v. De Lara,* 905 S.W.2d 43, 45 (Tex.App.-San Antonio 1995, no writ) (discovery sanctions); *Powell v. Swanson,* 893 S.W.2d 161, 163 (Tex.App.-Houston [1st Dist.] 1995, no writ) (paternity suit); *Humphrey v. Camelot Retirement Cmty.,* 893 S.W.2d 55, 59 (Tex.App.Corpus Christi 1994, no writ) (breach of contract case); *Hatteberg v. Hatteberg,* 933 S.W.2d 522, 526 (Tex.App.-Houston [1st Dist.] 1994, no writ) (divorce action); *Ocean Transp. v. Greycas, Inc.,* 878 S.W.2d 256, 269 (Tex.App.-Corpus Christi 1994, writ denied) (Deceptive Trade Practices Act case); *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (child support modification suit); *Abcon Paving, Inc. v. Crissup,* 820 S.W.2d 951, 954 (Tex.App.Fort Worth 1991, no writ) (discovery sanctions); *Elbaor v. Sanderson,* 817 S.W.2d 826, 828 (Tex.App.-Fort Worth 1991, no writ) (bad faith counterclaim under Deceptive Trade Practices Act); *Sims v. State,* 816 S.W.2d 502, 508

(Tex.App.Houston [1st Dist.] 1991, no writ) (involuntary commitment proceeding); *In re Marriage of Edwards,* 804 S.W.2d 653, 656 (Tex.App.-Amarillo 1991, no writ) (child support modification suit); *Escue v. Reed,* 790 S.W.2d 717, 720 (Tex.App.-El Paso 1990, no writ) (child support modification suit).

6. The *Schein* court did not elucidate whether the "benefit of the doubt" standard is more deferential or less deferential than the traditional abuse-of-discretion analytical construct that we do not reverse a trial court's decision unless it is arbitrary, unreasonable, or without reference to any guiding principles. *See State Farm Mut. Auto. Ins. Co. v. Lopez,* 45 S.W.3d 182, 186 (Tex.App.-Corpus Christi 2001, pet. dism'd w.o.j.) (reciting analytical constructs applicable to the abuse-of-discretion standard).

7. The *Schein* court did not discuss whether its repudiation of the "favorable light" construct is meant as a clarification of the abuse-of-discretion standard as generally applied in Texas, thus disallowing use of the construct in all abuse-of-discretion reviews, *see* note 5, *supra,* or whether it means that the standard for abuse-of-discretion review in class certification cases now stands alone.

8. The supreme court's condemnation of an analytical construct that appears repeatedly

fit of the doubt" to some decisions of the trial court. The supreme court did not illuminate the corners of the "benefit of the doubt" standard or its application outside the context of a trial court's assessment of witness credibility.[9] In view of the supreme court's professed embrace of the abuse-of-discretion standard in class certification cases, we will continue to review certification orders for abuse of discretion while utilizing well-recognized analytical constructs other than the "favorable light" construct.

■■■■ Thus, we will not substitute our judgment for that of the trial court. *Tana Oil,* 978 S.W.2d at 740. We will not find an abuse of discretion simply because a trial court determines an issue differently than we would. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985); *Vinson,* 880 S.W.2d at 823. We will find that a trial court abuses its discretion only if its decision is arbitrary, unreasonable, or without reference to any guiding principles. *State Farm Mut. Auto. Ins. Co. v. Lopez,* 45 S.W.3d 182, 186 (Tex.App.-Corpus Christi 2001, pet. dism'd w.o.j.); *Tana Oil,* 978 S.W.2d at 741. We will find that a trial court does not abuse its discretion if it bases its decision on conflicting evidence. *Tana Oil,* 978 S.W.2d at 741; *Vinson,* 880 S.W.2d at 823. We will find that a trial court does abuse its discretion

when its ruling is based on factual assertions not supported by material in the record. *Lopez,* 45 S.W.3d at 186; *Wood,* 994 S.W.2d at 801. Finally, we will continue to defer to the trial court's factual determinations, so long as they are properly supported by the record, while reviewing its legal determinations *de novo. Lopez,* 45 S.W.3d at 186.

## IV. SNYDER'S CHALLENGES TO CLASS CERTIFICATION

The trial court here found that appellees met their burden of demonstrating that this class action satisfies the requirements of rule 42(a) and 42(b)(4). TEX.R. CIV. P. 42(a); TEX.R. CIV. P. 42(b)(4). The application of rule 42's requirements to materials presented by both proponents and opponents of class certification has resulted in the development of particularized definitions of the numerosity, commonality, typicality, adequacy of representation, predominance, and superiority requirements of the rule. TEX.R. CIV. P. 42(a); TEX.R. CIV. P. 42(b)(4). Snyder does not challenge on appeal the trial court's findings on numerosity and typicality. We thus address in this section only Snyder's complaints with regard to: (1) an asserted error of law in the trial court's refusal to go beyond the pleadings in assessing the commonality and predominance issues; (2) the trial court's findings on commonality under rule

---

in court of appeals' decisions seems to call the precedential value of those opinions into question. We note that in a companion case to *Bernal,* the supreme court cited a court of appeals' opinion in which the "favorable light" construct was recited. *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 452–53 (Tex.2000) (citing *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.), *mandamus denied,* 951 S.W.2d 394 (Tex.1997)). In the absence of any instruction from the supreme court in this regard, for purposes of this opinion we reviewed each of the pre-*Schein* cases cited in this opinion before according any

precedential value to the opinion. We only cite a case in this opinion after determining that it appears that the reviewing court did not rely on any presumptions in holding that the trial court had not abused its discretion in certifying the class.

9. Since ultimately we do not find it necessary to give the trial court the "benefit of the doubt" on any issues before us in this appeal, we do not reach the question as to whether we must apply that standard in reviewing a trial court's decisions in a class action outside the context of witness credibility. *Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *10.

42(a) as that issue is subsumed in the predominance analysis required by rule 42(b)(4) and the trial court's failure to determine the superiority of the class-action mechanism; and (3) the trial court's findings on adequacy of representation under rule 42(a).

## A. The Materials Considered by the Trial Court

■ As a preliminary matter in its first issue, Snyder questions what evidence the trial court considered in making its class certification decision. Specifically, Snyder contends on appeal that the trial court should have considered Snyder's summary judgment materials, filed one and two days before the certification hearing, in ruling on the motion for class certification. During the certification hearing, Snyder's counsel mentioned evidence that Snyder asserted was contained in the summary judgment materials. However, counsel also stated:

The first thing the Court needs to determine is whether or not there's any cause of action here. In that regard—and it's not for today—but I'll represent to the Court that we have filed Motions for Summary Judgment as to each and every claim. That's the first issue.

The court asked:

They have been filed?

Snyder's counsel responded:

They have been filed, Judge, yesterday, the day before, very recently. We just got the transcripts back from the deposition of the Plaintiffs, and as quickly as they sent to us, we can draft these documents and get them to the Court.

So the Court understands, there are seven plaintiffs. Four of them have no documents. This is a document case that they need to prove without evidence. Snyder Communications, on the other hand, has produced documents for each and every one of those individuals and accounted for their LOAs submitted. Three of the plaintiffs do have documents, and in similar fashion Snyder Communications has accounted for the documents that have been submitted through the process. So in a document case, the Plaintiffs have none.

You'll also hear in the Motion for Summary Judgment—and it really goes to this because we need to know whether there's a representative claim. You'll hear each and every plaintiff without exception saying, "I destroyed documents, I threw them away, I don't know what I did with them," and this is after they knew a lawsuit existed. So we have a spoliation issue. It kind of sits to the side, but it goes to the merits of the case.

In addition to not requesting expressly at the certification hearing that the trial court consider the summary judgment materials in ruling on certification, Snyder also did not attach the summary judgment evidence to its written opposition to appellees' certification motion objecting to class certification, even though Snyder filed the certification response with the court at the same time it filed the summary judgment materials. Instead, Snyder affirmatively informed the court that the material submitted with the summary judgment motion was "not for today" and that the court would "hear in the Motion for Summary Judgment" that the "representative claim" and document destruction issue "kind of sits to the side" and "goes to the merits of the case." Snyder now argues on appeal that appellees did not dispute at the certification hearing the defensive issues allegedly established by Snyder's summary judgment materials, and thus the trial court erred in certifying the class without

taking the materials into account.[10]

 Certainly, a trial court can consider the pleadings and other material in the record, along with the evidence presented at the certification hearing, in making its class-action determination. *Employers Cas. Co.*, 886 S.W.2d at 474. Also, we agree with Snyder that the materials on which a trial court bases its certification ruling need not be in the form of evidence that is admissible at trial. *Wood*, 994 S.W.2d at 801; *Rio Grande Valley Gas Co. v. City of Pharr*, 962 S.W.2d 631, 640 (Tex.App.-Corpus Christi 1997, pet. dism'd w.o.j.); *Manning*, 914 S.W.2d at 615. However, the court may not consider factual assertions unsupported by the record. *Methodist Hosp. v. Tall*, 972 S.W.2d 894, 899 (Tex.App.-Corpus Christi 1998, no pet.). Nor may the court consider factual assertions that are purely speculative or that are not common knowledge. *Id.*

Snyder cites to *Bernal's* mandate that "[t]o make a proper analysis, '[g]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Bernal*, 22 S.W.3d at 435 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). Therefore, Snyder argues, the trial court here was required to consider Snyder's freshly filed summary judgment materials. We disagree. We are persuaded that the "rigorous analysis" prescribed

by *Bernal* contemplates development of a record from which a reviewing court can readily ascertain the materials the trial court considered in exercising its discretion. We are persuaded further that the supreme court's instruction in *Schein* that we no longer review materials presented to the trial court in a light most favorable to the court's certification decision makes it imperative that the record before us be free of ambiguity about what the trial court considered in making its decision.[11]

 We see no reason to exempt proponents and opponents of class certifications from preservation-of-error and waiver principles applicable to other litigants. *See Daughety v. Nat'l Assoc. of Homebuilders of the U.S.*, 970 S.W.2d 178, 181–82 (Tex.App.-Dallas 1998, no pet.) (affirming the trial court's denial of class certification because the plaintiffs had not presented the trial court with an opportunity to rule on the single-claim class argued on appeal). In the words of the Dallas Court of Appeals:

Our role as an appellate court is to determine the correctness of the lower court's judgment. That role is not altered by the fact that we are reviewing a decision on whether to certify a class action. Appellate rules reflect a policy that this Court decide a case in the same posture that was presented to the trial court. In keeping with that policy, issues to be reviewed by an appellate

**10.** We note that none of the voluminous exhibits attached to Snyder's motions for summary judgment was authenticated or supported by affidavit, including hundreds of pages of computer print-outs containing unexplained abbreviations, columns, and figures. Tex.R. Civ. P. 166a(f). Snyder also did not identify for the court which of its defenses were allegedly proved by the materials, nor did Snyder inform the court how the materials substantiated Snyder's defenses.

**11.** Historically, the analytical constructs employed by courts of appeal in reviewing class certification decisions may have resulted, at least in part, from proponents and opponents of certification confusing the rule that permits submission of materials at a certification hearing without proving an evidentiary predicate with relaxation of the general rule that materials submitted to a court must be formally introduced and made a part of the record.

court must have been actually presented to *and* considered by the trial court. It is axiomatic that justice is "best served by affording the trial court the first opportunity for review and decisions." Addressing matters not specifically presented to the trial court usurps the trial court's authority to evaluate and rule on issues before it and denies the appellate court the benefit of the trial court's decision.

*Id.* (citations omitted). It is incumbent on proponents and opponents of class certification alike to ensure not only that factual assertions on which they rely are supported by materials in the record, but also that the record reflects that they expressly asked the trial court to consider the material. *See Methodist Hosp.*, 972 S.W.2d at 899. We cannot meaningfully evaluate the trial court's exercise of discretion without an unambiguous record of what facts informed that discretion.

■■■ We are persuaded by the approach taken by federal courts in reviewing, under an abuse-of-discretion standard, the "rigorous analysis" performed by district judges in determining certification matters: a party seeking consideration of materials in the certification determination must request their consideration and ensure inclusion of the materials in the appellate record. *See Ezell v. Mobile Housing Bd.*, 709 F.2d 1376, 1380 (11th Cir. 1983) (holding that the trial court could not consider evidence submitted in support of motions for partial summary judgment and for certification in ruling on a decertification motion because the evidence was "never introduced as evidence at the decertification hearing."); *see also Jones v. Diamond*, 519 F.2d 1090, 1098 (5th Cir. 1975) (footnote omitted) ("Plaintiff relies heavily on the answers to his first set of interrogatories to defendant Diamond to flesh out the Rule 23 skeleton. Unhappily,

for reasons best known to himself, he did not formally introduce these interrogatories into evidence when the court announced it would decide the class certification question. The trial judge, therefore, was not legally compelled to consider the facts revealed through this discovery."). In the absence of any indication in the record that Snyder asked the trial court to consider the summary judgment materials in making its certification determination or that the trial court actually considered the materials, we find that the trial court was not required to consider the summary judgment materials.

■■■ Snyder also asserts on appeal that *Bernal* means that the trial court committed an error of law in its recitations in the certification order that:

> [A] trial court may, but is *not required to*, look beyond the pleadings. *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex.2000). Certification may be based on the pleadings alone. *In re Alford Chevrolet–Geo*, 997 S.W.2d 173, 181 (Tex.1999).

We disagree. *Bernal's* instruction to go "beyond the pleadings" in formulating a trial plan did not transform to "*must* look beyond the pleadings" the supreme court's statement in *Intratex* that "in determining whether the class certification requirements have been satisfied, the trial court *may* look beyond the pleadings." *Bernal*, 22 S.W.3d at 435; *Intratex*, 22 S.W.3d at 404 (emphasis added). Similarly, we do not read *Bernal* as overruling the supreme court's statement in *In re Alford* that "[i]n some cases, the certification decision can be made primarily on the basis of the pleadings, postponing and potentially eliminating the need for classwide discovery." *In re Alford Chevrolet–Geo*, 997 S.W.2d 173, 182 (Tex.1999).

In any event, the certification order recites factfindings that the trial court drew

from material outside the pleadings, including deposition testimony that appellees introduced at the certification hearing. Snyder's real complaint on appeal is not that the trial court did not consider material outside the pleadings in certifying the class, but that it did not consider Snyder's summary judgment materials. Having determined that the trial court was not required to consider Snyder's summary judgment evidence, we hold that the trial court did not commit any error of law in the materials it considered in ruling on the certification question. We overrule Snyder's first issue.

In its second issue, Snyder contends that the trial court erroneously concluded that common issues predominated over individual issues and did not determine that a class action was a superior method for fair and efficient resolution of the claims.

### B. Commonality, Predominance, and Superiority

#### 1. Definitions

##### a. *Commonality and Predominance Defined*

 The proponent of class certification must establish that there are questions of law or fact common to the class. Tex.R. Civ. P. 42(a); *Bernal*, 22 S.W.3d at 433. "Questions common to the class" are questions, when answered as to one class member, that are answered as to all class members. *City of Pharr*, 962 S.W.2d at 641. This requirement does not mean that all or even a substantial portion of the legal and factual questions must be common to the class. A single common question may provide adequate grounds for a class action under appropriate circumstances. *Id.; see Sun Coast Res., Inc. v. Cooper*, 967 S.W.2d 525, 532 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.) ("The threshold of 'commonality' is not

high.") (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)).

 Further, commonality is satisfied if the class members were subject to the same misrepresentations and omissions. *See Tana Oil*, 978 S.W.2d at 738 (finding commonality and predominance when the suit involved interpretation of a contract term that affected all class members). In most cases in which appellate courts have found an absence of commonality, the opinions have emphasized the great factual diversity of the individual claims and the ultimate dependence of any common legal questions on the facts of each individual claim. *See, e.g., Bernal*, 22 S.W.3d at 436.

 The commonality requirement under rule 42(a) is distinguished from the more stringent provision of rule 42(b)(4) that common questions of law or fact must predominate over questions involving individual members. Tex.R. Civ. P. 42(a); Tex.R. Civ. P. 42(b)(4); *Bernal*, 22 S.W.3d at 433. Rule 42(b)(4) describes only one of several types of authorized class actions. Tex.R. Civ. P. 42(b). If a predominance-of-common-questions class action is asserted, the commonality determination is subsumed under the predominance determination. *Wood*, 994 S.W.2d at 802. The predominance test is used to determine whether common issues predominate over individual issues, and inquires whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Bernal*, 22 S.W.3d at 434.

 The predominance requirement is "one of the most stringent prerequisites to class certification." *Id.* at 433. Rule 42(b)(4) contains a non-exhaustive list of factors that are relevant to the predominance inquiry: (1) the interest of members of the class in individually controlling the prosecution or defense of their particular

actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. TEX.R. CIV. P. 42(b)(4); *Bernal,* 22 S.W.3d at 433–34.

A trial court ruling on commonality and predominance must first identify the substantive issues controlling the litigation's outcome. *Graebel/Houston Movers, Inc. v. Chastain,* 26 S.W.3d 24, 33 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). The purpose of this requirement is to determine whether the character and nature of the case satisfy the requirements of the class-action procedural rule, not to weigh the substantive merits of each class member's claim. *Id.*

■ Next, the trial court must correctly identify the elements of the named plaintiffs' causes of action. Then:

> [t]he question the court must decide before certifying a class, after rigorous analysis and not merely a lick and a prayer, is whether the plaintiffs have demonstrated that they can meet their burden of proof in such a way that common issues predominate over individual ones.

*Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *13.

■ In *Schein,* "[t]he court of appeals premised its affirmance of the order on the mistaken belief that reliance was not an element of the plaintiffs' principal causes of action." If " 'individual reliance is necessary to prove actual damages, a class action may not be certified on this issue.' " *Id.* at ——, 2002 WL 31426407, at

*14 (quoting *Perrone v. Gen. Motors Acceptance Corp.,* 232 F.3d 433, 440 (5th Cir.2000)). On the other hand, "[i]f a plaintiff could prove reliance in an individual action with the same evidence offered to show class-wide reliance, then the issue is one of law and fact common to the class." [12] *Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *13.

■ As to the effect of damages calculations on commonality and predominance, the fact that damages must be computed separately for each class member does not necessarily mean that individual issues predominate over common issues of law and fact. *Cooper,* 967 S.W.2d at 534. Determination of the amount of actual damages subject to documentary proof, such as "checks, charge slips, receipts, or other evidence of payment . . . would be common to the class and would not require individual examination of class members except in unusual instances." *Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *14. Consequential damages, on the other hand, "would obviously have to be determined class member by class member." *Id.* Similarly, "[s]tate and federal courts have overwhelmingly rejected class certification where multiple states' laws must be applied." *Id.* at ——, 2002 WL 31426407, at *17 (footnotes omitted).

As to the effect of defenses on commonality and predominance, Texas courts have held that the existence of affirmative defenses will not prevent class certification. *Chastain,* 26 S.W.3d at 30; *see, e.g., Manning,* 914 S.W.2d at 613–14 (contributory negligence, superseding cause, and failure to comply with warranty); *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 373 (Tex.

---

**12.** *Schein* declined to "decide whether a class asserting a cause of action requiring proof of reliance, like the class alleged here, can ever be certified." *Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *14.

App.-El Paso 1993, no writ) (limitations, lack of misrepresentation, and ratification).

### b. Superiority Defined

A class action is the superior method of adjudicating claims when "the benefits of class-wide resolution of common issues outweigh any difficulties that may arise in the management of the class." *Hankins*, 51 S.W.3d at 754; *Chastain*, 26 S.W.3d at 34. In determining whether a class action is superior, factors the trial court may consider include: (1) class members will benefit from the discovery that has already been completed, thereby eliminating duplication of effort; (2) the trial court has already spent substantial time and effort becoming familiar with the issues of the case, which weighs favorably for a fair and expeditious result; and (3) class members have an interest in resolving common issues by class action. *Hankins*, 51 S.W.3d at 754–55.

### 2. The Certification Materials—Commonality, Predominance and Superiority

Appellees introduced as exhibits during the hearing "Plaintiffs' Second Amended Original Petition and Demand for Jury Trial," an agreement entitled "Snyder Communications Consumer Markets Sales Procedures and Payment Policies" that provided for signatures of the employee and a Snyder representative, and an agreement entitled "AT & T Sales Associate Commission Plan" that also provided for the signatures of both parties. Snyder's budget director testified by deposition that the direct sales procedures and compensation policies set out in the agreements, as modified from time to time, applied nationwide within Snyder's organization. He acknowledged that data processing criteria, commission and bonus schemes, supervisory structure, pay parameters, and Letter of Authority writing and rejection standards applied company-wide. He also agreed that all of the sales associates employed by Snyder would have had Letters of Authority rejected at one time or another.

The budget director also testified that Snyder had twenty to twenty-five offices throughout the United States, including Los Angeles, Seattle, Dallas, San Antonio, Houston, New York, Miami, Orlando, Philadelphia, Washington, D.C., and Chicago. Snyder's counsel represented to the court that there was a similar lawsuit in California that had recently settled and another, with two plaintiffs, pending in Corpus Christi, Texas. The "AT & T Sales Associate Commission Plan" introduced into evidence by appellees contains tables that show commissions and bonuses from $.50 to $13.00 based on volume and percentages of performance and quality goals.

Appellee Josefina Magana testified by deposition that she left her position as sales associate for Snyder because it was not paying the commissions it owed her. She also testified that one of Snyder's vice presidents, when asked why the commissions were not being paid in full, said that "the problem was present in all the company, not just in McAllen, in the whole company," and that "he would do his best—the best he possibly could in his job to make sure that these commissions would be paid to the employees within the whole of Snyder, within the whole of the United States."

Snyder argued to the trial court that each claim by each class member of nonpayment of a commission or bonus is subject to one or more of Snyder's defenses and must be determined on a case-by-case basis. Therefore, Snyder concluded, individual issues predominate over common issues of law and fact.

### 3. The Findings of Fact—Commonality, Predominance, and Superiority

The trial court made the following findings of fact in the certification order regarding commonality, predominance, and superiority:

1. Throughout the United States of America, Defendant Snyder Communications, L.P. hired sales associates or field representatives to market residential telephone service for AT & T.

2. Defendant employed these sales associates or field representatives at approximately twenty to twenty-five locations throughout the United States of America.

3. Defendant employed these sales associates or field representatives on a commission basis.

4. Defendant employed these sales associates or field representatives pursuant to a written contract.

\* \* \*

8. It is unlikely that class members would be able to prosecute individual lawsuits.

9. There are common questions of law or fact affecting the class. These common questions of law or fact predominate over questions involving individual class members and will be the object of most of the efforts of the litigants and the court.

10. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

11. The Plaintiffs are alleging that the Defendant engaged in a common course of conduct with regard to all class members.

12. The Plaintiffs are alleging that all members of the class were subject to the same misrepresentation(s) by the Defendant.

13. The claims of the class representatives arise from the same event or course of conduct giving rise to the claims of the other class members and are based on the same legal theories.

\* \* \*

In this case, the putative class members are dispersed throughout the United States. It is impracticable for a class member in California, New York, Chicago or Florida to join as a named plaintiff in this Hidalgo County litigation in order to recover what individually might be a small sum.

The Court notes that the Corporate Representative of Defendant Snyder Communications, L.P. admitted at his deposition that at any given time Defendant employed approximately 500 persons as sales associates or field representatives. These persons were employed at one of 20–25 offices in the United States. Additionally, the Court notes that one of the class representatives testified in her deposition that the vice-president of Defendant visited Defendant's McAllen location and informed her that Defendant's problem with paying commissions was company-wide throughout the United States. . . .

### 4. The Conclusions of Law—Commonality, Predominance, and Superiority

The trial court made the following conclusions of law in the certification order applicable to commonality, predominance, and superiority:

Plaintiffs' petition shows on its face that *all* questions of law and fact affecting the class are common. The Court therefore finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other

available methods for the fair and efficient adjudication of the controversy. The matters pertinent to this finding include: the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in a particular forum and the difficulties likely to be encountered in the management of a class action. The following are some of the common issues raised in the pleadings:

(a) whether Defendant's actions constitute breach of contract;

(b) whether Defendant engaged in common law fraud or misrepresentation.

These issues are similar in many respects to the issues recently considered by the Austin Court of Appeals in *Henry Schein, Inc. v. Stromboe*, 28 S.W.3d 196, 205 (Tex.App.-Austin 2000). In *Henry Schein*, the court concluded that the issues, including misrepresentation and breach of contract, were common to the class. This Court finds that Plaintiffs' issues are common as well. Defendant's alleged misrepresentations are substantially similar and Defendant is alleged to have engaged in a common course of conduct. See *Henry Schein*, 28 S.W.3d at 206; *Texas Commerce v. Wood*, 994 S.W.2d 796, 803 (Tex.App.-Corpus Christi, 1999); *Weatherly*, 905 S.W.2d at 651. *Adams v. Reagan*, 791 S.W.2d 284, 289 (Tex.App.-Fort Worth 1990, no writ).

The alleged breach of contract and misrepresentations were uniform to all class members. If these issues are resolved as to Plaintiffs, they will be resolved as to all members of the proposed class. These issues are therefore common issues because an answer as to one class member is an answer as to all class members. See *Shein* [sic], 28 S.W.3d at 206; *Weatherly*, 905 S.W.2d at 648. Those questions that do not produce common answers are not common questions under Rule 42. See *Wente v. Georgia–Pac. Corp.*, 712 S.W.2d 253, 257 (Tex.App.-Austin 1985 [1986], no writ).

All of the issues in this case are common to the class and Plaintiffs have therefore satisfied the requirements set forth in 42(a) and 42(b)(4).

### 5. Application of the Law to the Facts—Commonality, Predominance, and Superiority

#### a. *The Commonality and Predominance Issue*

The trial court cited the lower court *Schein* decision in its commonality analysis. *Henry Schein, Inc. v. Stromboe*, 28 S.W.3d 196, 205 (Tex.App.-Austin 2000), *rev'd*, 46 Tex.Sup.Ct. J. 103, —— S.W.3d —— 2002 WL 31426407 (October 31, 2002). However, the trial court did not base its commonality and predominance decisions solely on *Schein*, and Snyder has not asserted on appeal that the trial court committed an error of law in relying on *Schein*. Snyder does argue on appeal that three cases support its contention that the trial court erroneously concluded that common issues predominated over individual issues: *Becton Dickinson & Co. v. Usrey*, 57 S.W.3d 488 (Tex.App.-Fort Worth 2001, no pet.); *Texas Dept. of Trans. v. Barrier*, 40 S.W.3d 153 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (op. on reh'g); and *E & V Slack, Inc. v. Shell Oil Co.*, 969 S.W.2d 565 (Tex.App.-Austin 1998, writ dism'd w.o.j.). All three cases are distinguishable from the certification record in this case.

*Usrey* was a "multi-accident, medical-device" products liability case, "ill-suited

for class treatment because there is no single èvent, cause, or defense," in which the trial court fashioned a summary judgment scheme that did "not exist anywhere in the universe of Texas law." *Usrey,* 57 S.W.3d at 494. Instead, the certification order "create[d] an 'alternative universe' where normal jurisprudential rules and principles [did] not apply, and where the rights and protections afforded other product liability defendants, such as full and fair discovery, cross-examination of witnesses, and trial by jury, would be unfairly restricted, if not entirely denied." *Usrey,* 57 S.W.3d at 497. Thus, *Usrey* provides no support for Snyder's opposition to certification in this case.

Snyder also argues that *Barrier* is factually similar to the record here. We do not find applicable to this case the claims of flooded homeowners against multiple government agencies and developers, circumstances in which "various factors contributed to the flooding in varying degrees within each class area." *Barrier,* 40 S.W.3d at 159. In any event, *Barrier* reversed the trial court and remanded the case for further proceedings in light of *Bernal,* without prejudice to further consideration of class certification. *Barrier,* 40 S.W.3d at 160.

■■■ Finally, *Shell Oil* affirmed the trial court's exercise of discretion in *denying* class certification, not in *certifying* the class. *Shell Oil Co.,* 969 S.W.2d at 571. A court may base a ruling on contradictory facts and still act within its discretion. *Manning,* 914 S.W.2d at 615. Thus, two courts could examine contradictory facts and arrive at opposite conclusions without either abusing its discretion. Accordingly, *Shell Oil* provides no insight into the parameters of a trial court's exercise of discretion in *certifying* a class.

■■■ Snyder also complains on appeal that the trial court committed an error of law by confusing the commonality and predominance factors in performing a less stringent commonality analysis instead of subsuming commonality in the more restrictive predominance analysis. We disagree. The certification order expressly distinguishes between the two related concepts of commonality and predominance with reference to the facts before it and the applicable law.

As to commonality, the trial court found that sales associates throughout the United States were employed by Snyder on a commission basis pursuant to a written contract and that Snyder's representative had acknowledged that a problem with not paying commissions was "company-wide throughout the United States." The trial court also found that appellees alleged that Snyder had engaged in a common course of conduct with regard to all class members and that all members of the class were subject to the same misrepresentations by Snyder.

As to predominance, the certification order explicitly recites that the court had reviewed and understood "the claims of the plaintiff" and "the defenses of Defendant." The trial court also recited within the certification order the applicable law and factors relevant to a predominance determination and concluded that "the questions of law or fact common to the members of the class predominate over any question affecting only individual members"

Snyder also argues on appeal that the certification order does not identify its myriad defenses, and thus the trial court attached no weight to its individual defenses in determining that common issues of law and fact predominate over individual

claims and defenses.[13] Snyder contends that within its summary judgment materials "[t]he company's records showed that it had properly accounted for each [Letter of Authority] it had received from the plaintiffs." It further asserts that Snyder "proved the viability of its defenses by offering summary judgment proof to support them. Because the plaintiffs did not dispute the facts regarding these defensive issues, the district court erred in certifying the class without taking them into account—and indeed erred in certifying a class action at all."

 Snyder's arguments focus on the merits of its defenses, an improper subject for inquiry in certification of the class. *Intratex*, 22 S.W.3d at 404; *Lopez*, 45 S.W.3d at 191. "There are several procedural mechanisms with which a defendant may properly challenge the viability of a plaintiff's causes of action. *See, e.g.*, TEX.R. CIV. P. 91 (special exceptions) and TEX.R. CIV. P. 166a (summary judgment)." *Lopez*, 45 S.W.3d at 191. A class certification proceeding is not one of them. We do not believe *Bernal* changed this rule. *Id.; see Lopez II*, —— S.W.3d at ——, 2002 WL 31426668, at *1 (*"Bernal* does not require a trial court to evaluate the merits of the plaintiffs' claims.").

 As required, the trial court identified the predominant issues in this case: whether Snyder's "actions constitute breach of contract" and whether Snyder "engaged in common law fraud or misrep-

resentation." *See Chastain*, 26 S.W.3d at 34. The class here encompasses: (1) Snyder sales associates hired pursuant to identical employment contracts; (2) a single defendant; and (3) a single unifying compensation and bonus policy that applied company-wide.[14] *See Tana Oil*, 978 S.W.2d at 742. Snyder contends that because it allegedly has defenses to each unpaid commission, individual resolution of each rejected Letter of Authority will predominate over the common issues of law and fact. Nothing prevented Snyder from introducing at the certification hearing materials that demonstrated its point for the trial court's consideration in determining the class certification issue. *Id.* at 743. It did not do so. Although appellees bear the burden of meeting each requirement of rule 42, including predominance, this burden did not include introducing into evidence every conceivable document that might affect the parties' obligations. *Id.* In any event, even if the trial court had considered Snyder's summary judgment materials with regard to the defenses allegedly presented in the materials, the fact that individual defenses may defeat particular claims does not mean that individual issues predominate over common issues of law and fact. *Chastain*, 26 S.W.3d at 30; *see, e.g., Manning*, 914 S.W.2d at 613–14; *Dresser Indus.*, 847 S.W.2d at 373. We find that the certification order properly identified the substantive legal issues controlling the litigation's outcome. *Chastain*, 26 S.W.3d at 33.

13. We note that Snyder filed a general denial in response to appellees' individual claims in their original petition, but pleaded more than thirty specific or affirmative defenses in its answer to the amended petition asserting a class action. We do not read *Bernal's* requirement that the trial court perform a "rigorous analysis" in applying rule 42 as permitting a defendant to defeat class certification merely by alleging every conceivable defense to the claims.

14. The "AT & T Sales Associate Commission Plan" introduced at the certification hearing was only one of several versions of the compensation scheme applicable to Snyder sales associates over time, but Snyder acknowledged that each commission plan, when effective, applied company-wide.

Snyder also argues on appeal that because the trial court did not specifically identify Snyder's defenses in the certification order, the court's recitation of the common issues in this case is too general to satisfy the commonality and predominance requirements of rule 42. Tex.R. Civ. P. 42(a); Tex.R. Civ. P. 42(b). We note that the Austin court of appeals recently reviewed similar commonality and predominance issues in *National Western.* *Nat'l Western,* 86 S.W.3d at 298–99. The class members in *National Western* each entered into an agreement for insurance coverage pursuant to virtually identical contracts issued by National. *Id.* at 299. National's alleged tortious conduct in failing to refund premiums pursuant to the contracts was uniform for every class member. *Id.* Therefore, because National engaged in a common course of conduct and entered into agreements with each class member based on virtually identical documents, the Austin court of appeals held that the trial court's initial determination that the commonality and predominance requirements had been satisfied was not an abuse of discretion. *Id.* at 300. We find it informative that the Austin court of appeals upheld the trial court's commonality and predominance decision in *National Western* even though National had interposed statute-of-limitation defenses to each claimant, claims subject to "proof of each individual class member's subjective knowledge concerning discovery of the injury alleged." *Id.* at 299.

■ Finally, in support of its issue on appeal that the trial court ignored the requirement that it determine whether a class action was the superior method of resolving the plaintiffs' claims, in its reply brief Snyder argues that different legal standards will govern the plaintiffs' fraud and contract claims throughout the several states involved. This choice-of-law issue is properly a challenge to the predominance of class claims over individual claims. *Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *17.

The materials before the trial court indicate the involvement of the following jurisdictions in addition to Texas: California, the District of Columbia, Florida, Illinois, New York, Pennsylvania, and Washington. The trial plan adopted by the trial court recites the elements of the cause of action of breach of contract in Texas:

(1) the existence of a valid contract; (2) performance or tendered performance by Plaintiff; (3) breach of the contract by Defendant; and (4) damage to Plaintiff resulting from that breach. *Hussong v. Schwan's Sales Enters, Inc.,* 895 [896] S.W.2d 320, 326 (Tex.App.-Houston [1st Dist.] 1995, no writ).

The trial plan also set out the elements of the cause of action of fraud in Texas:

a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Sears Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990).

■ We have examined the elements of breach of contract and fraud in the other listed jurisdictions.[15] We recognize

---

**15.** As to breach of contract: *Amelco Elec. v. City of Thousand Oaks,* 27 Cal.4th 228, 115 Cal.Rptr.2d 900, 38 P.3d 1120, 1129–30 (2002) ((1) existence of contract; (2) performance or excuse for nonperformance; (3) breach; and (4) damage); *Bembery v. District of Columbia,* 758 A.2d 518, 520 (D.C.2000) ((1) contract; (2) unjustified failure to perform; and (3) damages); *AIB Mortgage Co. v. Sweeney,* 687 So.2d 68, 69 (Fla.Dist.Ct.App.

that other issues of law may arise and other jurisdictions may become relevant during this litigation. However, we did not find any substantive variations on the basic breach-of-contract and fraud theories of recovery pled by appellees. Snyder did not oppose certification in the trial court on any choice-of-law basis, either in arguing that commonality and predominance are not present or that superiority of the class-action device is defeated by any individualized legal analyses demanded by a nation-wide class. We agree with the trial court's assessment in the context of numerosity (not challenged on appeal by Snyder):

> Defendant does not seriously dispute that numerosity exists. Additionally, Defendant alone has access to the exact

1997) ((1) the existence of a contract; a breach; and damages); *Barille v. Sears Roebuck & Co.,* 289 Ill.App.3d 171, 224 Ill.Dec. 557, 682 N.E.2d 118, 121(1997) ((1) an offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damage resulting from the breach); *Ledain v. Town of Ontario,* 192 Misc.2d 247, 746 N.Y.S.2d 760, 763 (N.Y.Sup.Ct.2002) ((1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage); *Corestates Bank v. Cutillo,* 723 A.2d 1053, 1058 (Pa.Super.Ct.1999) ((1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages); *Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus.,* 78 Wash.App. 707, 899 P.2d 6, 6–7 (1995) ((1) contract; (2) breach; and (3) damages); *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 1 (1977) ("A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.").

As to fraud: *Lazar v. Superior Court,* 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981, 985 (1996) ((1) misrepresentation; (2) knowledge of its falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage); *Corestates Bank v. Cutillo,* 723 A.2d 1053,1058 (Pa.Super.Ct.1999) ((1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; (5) an action that is taken in reliance on the representation; and (6) "provable damages" resulted from the fraud); *Essex Ins. Co., Inc. v. Universal Entertainment & Skating Center, Inc.,* 665 So.2d 360, 362 (Fla.Dist.Ct.App.1995) ((1) a false representation of fact; (2) known by the party making it to be false at the time it was made;

(3) that the representation was made for the purpose of inducing another to act in reliance on it; (4) actual reliance on the representation; and (5) resulting damage); *Neptuno Treuhand Und Verwaltungsgesellschaft Mbh v. Arbor,* 295 Ill.App.3d 567, 229 Ill.Dec. 823, 692 N.E.2d 812, 815 (1998) ((1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance); *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1373 (1996) ((1) misrepresentation or a material omission; (2) falsity; (3) scienter; (4) justifiable reliance; and (5) injury); *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994) ((1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance); *Stiley v. Block,* 130 Wash.2d 486, 925 P.2d 194, 204 (1996) ((1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff); *see also* RESTATEMENT (SECOND) OF TORTS, § 525 (1981) ("One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.").

numbers and any argument that Plaintiffs cannot state the exact number of class members is invalid and pure "sophistry".

Similarly, the jurisdictions in which Snyder employed sales associates and the applicable law in those jurisdictions are known only to Snyder at this juncture, but Snyder did not oppose certification on choice-of-law grounds in the trial court. The usual rule, based on considerations of fairness, does not place the burden of proof on a litigant to establish facts peculiarly within the knowledge of its adversary. *United States v. New York, N.H. & H.R. Co.*, 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957). Courts have applied this general rule in the class-action context by shifting to opponents of class certification the burden of production of facts demonstrating conflicts of interest between proposed representatives and the class. *See, e.g., Lopez,* 45 S.W.3d at 192 (recognizing that asserted conflicts of interest must be evidenced in the record). We see no reason to exempt choice-of-law issues in class actions from this general rule. *See In re: Ford Motor Co. Ignition Switch Prods. Liability Litig.,* 174 F.R.D. 332, 350–51 (D.N.J.1997) (holding that defendants' presentation of the varying legal standards and burdens of proof applicable to design-defect claims arising in fifty-one jurisdictions defeated predominance).

 The supreme court in *Schein* discussed the choice-of-law questions cre-ated by complex consumer-protection laws, which vary markedly from jurisdiction to jurisdiction. *Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *15. By contrast, the breach-of-contract and fraud theories of recovery pled by appellees here are comparatively basic and uniform from jurisdiction to jurisdiction. Given the nature of the claims at issue in this case, we find that appellees were not required to present any choice-of-law legal arguments to the trial court to meet their burden to show compliance with the predominance and superiority requirements of rule 42(b). TEX.R. CIV. P. 42(b). In any event, Snyder does not cite any authority in its reply brief in arguing that superiority is defeated on choice-of-law grounds by a nation-wide class. Issues not supported by argument and authorities are waived. TEX. R.APP. P. 38.1(h); *Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex.1994); *Columbia Rio Grande Regional Hosp. v. Stover,* 17 S.W.3d 387, 392 (Tex.App.-Corpus Christi 2000, no pet.). We hold that Snyder waived its complaint that any choice-of-law questions created by a nation-wide class defeat either predominance or superiority.[16]

We note that a Kansas federal district court certified a class on claims similar to those asserted by appellees here. *Smith v. MCI Telecomm., Inc.,* 124 F.R.D. 665, 669–71 (D.C.Kan.1989). MCI was a long-distance telephone company that employed

---

**16.** Similarly, Snyder did not oppose certification in the trial court on the grounds that the reliance element of common-law fraud defeated commonality. *See Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *14. Even so, we note that reliance based on written representations, as here, as opposed to oral representations, does not defeat predominance. *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1378 (11th Cir.1984) (finding predominance where each class member received identical Truth–In–Lending disclosure state-ments); *see also Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764, 774 (Tex.App.-Fort Worth 1986, no writ) ("Consumer class actions involving numerous separate transactions may still be found to have sufficient community of interest so long as class members are not required to individually litigate numerous and substantial questions to determine each member's right to recover subsequent to the ruling on the class action issues.").

salespersons to sell its services to the public under written commission and bonus arrangements analogous to the written compensation agreements between Snyder and appellees. *Id.* at 669. Smith alleged that MCI defrauded its employees in a variety of ways that resulted in non-payment of commissions and bonuses earned by and owed to the employees. Smith filed suit for breach of contract, for common-law fraud, and under the Racketeer Influenced and Corrupt Organizations Act. MCI argued that three factors defeated typicality, would be the focus of the litigation, and negated predominance: (1) the individual reliance elements of the causes of action; (2) a jurisdictional defense based on Smith's alleged failure to exhaust administrative remedies; and (3) complex damages issues. *Id.* The district court certified the class, stating:

> Smith's complaint indicates that the basic misrepresentation made to the salespersons was that they would be paid commissions according to the terms of the plans and addenda then in effect. The plans and addenda were written documents (with the exception of the January 1, 1985, addendum) which were shown to all salespersons. Thus, the basic misrepresentation giving rise to the fraud claim is uniform (although different plans were in effect at different times, all salespersons were subject to the same alleged misrepresentation: that they would be compensated under the terms of the plan then in effect) and written.

*Id.* at 678. Although Snyder has asserted many more defenses here than MCI did, we are persuaded that the federal court's predominance analysis reflects the correct approach.

The trial court sits in the best position to assess the relative strength of the class-action mechanism to do justice in any given case. *Tana Oil,* 978 S.W.2d at 743. Accordingly, we decline Snyder's invitation to substitute our judgment for that of the trial court. The trial court's ruling that appellees satisfied the commonality and predominance requirements of rule 42(a) and rule 42(b)(4) was not arbitrary, unreasonable, or without reference to any guiding principles. We find that the trial court applied correct legal standards and properly applied the law to the facts in reaching its decision. *See Lopez,* 45 S.W.3d at 186 (reciting abuse-of-discretion standards); *Tana Oil,* 978 S.W.2d at 741 (same). Accordingly, we hold that the trial court did not abuse its discretion in determining that the class claims asserted by appellees demonstrated the requisite commonality and that common issues of law and fact predominated over any individual issues.

### b. The Superiority Issue

 Snyder also complains in its second issue that the trial court "did not determine whether a class action was superior, but ignored that requirement entirely."[17] To the contrary, the certification order sets out facts the trial court considered, finding that class members are scattered throughout the United States and that "[i]t is unlikely that class members would be able to prosecute individual lawsuits." Further, the certification order identifies the substantive breach-of-con-

---

17. Snyder does not in its brief argue or cite any authority that challenges the trial court's finding that a class action is a superior method of fairly and efficiently adjudicating the controversy. Nor does Snyder raise on appeal that the size of appellees' claims pre-clude a finding that individual pursuit of the claims is economically infeasible, as the supreme court found in *Schein. Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *18 (individual damages limited to $74,000 by stipulation).

tract and fraud claims common to the class and reaches the legal conclusion that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." [18]

Snyder also asserts that "[g]iven that the summary judgment proof showed that the named plaintiffs had no recovery . . ., the court had an obligation to absent class members to determine whether the class action was a superior method of adjudicating fairly *their own claims*." (emphasis in original). The trial court, however, quite properly did not weigh the substantive merits of the claims and defenses in determining that the character and nature of the case satisfy the requirements of rule 42. TEX.R. CIV. P. 42(a); TEX.R. CIV. P. 42(b)(4); *Chastain*, 26 S.W.3d at 29. The trial court did determine that the class-action device was a superior method of resolving the claims presented by this lawsuit. We overrule Snyder's second issue.

We next address Snyder's fourth issue, which contends that appellees will not fairly and adequately protect the interests of the class.

## C. Adequacy of Representation

### 1. Adequacy of Representation Defined

The requirement for "adequacy of representation" in rule 42(a) has two prongs: (1) it must appear that the representatives, through their attorneys, will vigorously prosecute the class claims; and (2) there must be an absence of antagonism or conflict between the representative's interest and those of the class. *Lopez*, 45 S.W.3d at 192. Factors affecting

this determination include: (1) the adequacy of counsel; (2) the potential for conflicts of interest; (3) the personal integrity of the class representatives; (4) the representative's familiarity with the litigation and his or her belief in the legitimacy of the grievance; (5) whether the class is unmanageable because of geographical limitations; and (6) whether the class representative can afford to finance the class action. *Id.* Although class representatives must take an active role, class certification does not require a higher standard of involvement from a proposed class representative than from an individual plaintiff. *Weatherly*, 905 S.W.2d at 652; *see Manning*, 914 S.W.2d at 614–15 (finding that the failure of the class representatives to attend the certification hearing did not preclude a finding of adequate representation). Further, any asserted conflicts of interest must be evidenced in the record. *Lopez*, 45 S.W.3d at 192.

In Texas, the qualifications and experience of class counsel are of greater consequence in determining adequacy of representation than the knowledge of the class representatives. *Weatherly*, 905 S.W.2d at 652; *Manning*, 914 S.W.2d at 614. Failure of counsel to move for certification of the class before trial bears strongly on the issue of adequacy of representation for unnamed class members. *E. Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). Delay in moving for certification and prosecuting an action does not show inadequacy of counsel as a matter of law unless it results in prejudice to the class or opposing party. *See Angeles/Quinoco Sec. Corp. v. Collison*, 841

---

**18.** Although the trial court incorporated this statement into its findings of fact in the certification order, the designation is not controlling, and we may treat it as a conclusion of law. *See Ray v. Farmers' State Bank*, 576

S.W.2d 607, 608 (Tex.1979) ("Although this finding appears among the conclusions of law, the designation is not controlling and we may treat it as a finding of fact.")

S.W.2d 511, 514 (Tex.App.-Houston [14th Dist.] 1992, no writ) (finding that a five-year delay, limited discovery, and the appearance of the case on the court's dismissal docket did not show inadequacy as a matter of law when the case was complex, there were ongoing negotiations, and no showing was made that the parties or class were prejudiced); *see also Monsanto Co. v. Davis*, 25 S.W.3d 773, 783 (Tex.App.-Waco 2000, pet. dism'd w.o.j.) (finding that twenty-four months between the filing of the claim and the certification hearing is not an unreasonable delay absent any showing of the reason for the delay). Finally, counsel's own representations to the trial court of matters within counsel's personal knowledge, *e.g.*, regarding the litigation qualifications and trial experience of the lawyers handling the case, may support a determination that counsel is adequate to represent the proposed class. *Cooper*, 967 S.W.2d at 539.

## 2. The Certification Materials—Adequacy of Representation

At the certification hearing, appellees' counsel represented to the trial court that he had "spoken with—what would be the class representatives, and they are very willing to represent the class in a class-action suit and vigorously pursue it." One of the appellees testified by deposition that she understood that the difficulty she had encountered in not getting paid her commissions was a company-wide problem throughout the United States, evidencing an understanding of the litigation. Counsel detailed his own litigation experience and the extensive litigation experience of four other lawyers associated on the case, and he testified that associated class counsel was willing to advance the cost of notice to all class members and that there were no antagonistic interests involved in the claims.

Snyder claimed to the trial court that its summary judgment materials proved that several of the named plaintiffs had thrown away the documentation on which their claims were based and that appellees had been dilatory in conducting discovery and pursuing the case. Snyder argues on appeal that this conduct indicated that the named plaintiffs were not adequate representatives.

## 3. The Findings of Fact—Adequacy of Representation

The trial court made the following findings of fact in the certification order regarding adequacy of representation:

14. Plaintiffs are excellent class representatives. They bring this class action with the intention to vigorously prosecute the class claims. There are no conflicts or antagonism between the class representatives and the class members. The class representatives will fairly and adequately represent the interests of the class.

15. Similarly, class counsel are sufficiently qualified and experienced to prosecute the action vigorously. Counsel for Plaintiffs have agreed to advance the costs of notice to all class members.

16. There is no conflict of interest between counsel for the class and the class.

## 4. The Conclusions of Law—Adequacy of Representation

The trial court made the following conclusions of law in the certification order regarding adequacy of representation:

Plaintiffs have shown that they are willing to be class representatives through their commitment to this case. Defendant has wholly failed to show any conflict between Plaintiffs and the class members, much less one that "goes to

the very subject matter of the litigation."

In fact, the typicality of Plaintiffs' claims compared to those of the class members demonstrates conclusively that no antagonism of any type exists in this case. *See Microsoft,* 914 S.W.2d at 614 ("This issue often is collapsed into typicality analysis."). Plaintiffs have no interests adverse to other members of the class.

Courts look to class counsel, not the named plaintiff, to determine whether vigorous prosecution is probable. Texas law does not require a higher standard of involvement from a proposed class representative than from an individual plaintiff. *Weatherly,* 905 S.W.2d at 652. The qualifications and experience of the class counsel is of greater consequence than the knowledge of the class representatives. *Microsoft,* 914 S.W.2d at 614; *Weatherly,* 905 S.W.2d at 652.

Class counsel in this case are well qualified and experienced to prosecute this suit vigorously. In addition, counsel have agreed to advance all costs notifying the class if the Court certifies this case to proceed as a class action.

### 5. Application of the Law to the Facts—Adequacy of Representation

■ Snyder's factual assertions regarding appellees' alleged dilatory prosecution of the case, abusive conduct in discovery, and destruction of documents are not supported by the record before the trial court with regard to the certification hearing. As noted above, the record does not reflect that Snyder asked the trial court to consider the summary judgment and discovery materials in making its cer-

tification determination. Thus, the trial court was not required to consider Snyder's factual assertions, unsupported by material in the record, regarding the adequacy of appellees as class representatives. *Methodist Hosp.,* 972 S.W.2d at 899.

The trial court found that "class counsel are sufficiently qualified and experienced to prosecute the action vigorously." Counsel's representations to the trial court about the extensive litigation experience of the lawyers handling the case, as well as their commitment to advancing the expenses of notice to the class, supported the trial court's determination that counsel are adequate to represent the proposed class.[19] *Cooper,* 967 S.W.2d at 539; *Manning,* 914 S.W.2d at 614. The record does not reflect any conflicts of interest between the named plaintiffs and other class members or between counsel and the class. *Lopez,* 45 S.W.3d at 192. Nor do we find that the record here shows that the delay of nine months in moving for certification and prosecuting this case as a class action resulted in prejudice to the class or to Snyder so as to render appellees inadequate class representatives. *Davis,* 25 S.W.3d at 783; *Collison,* 841 S.W.2d at 514–15.

■ Finally, class certification does not require any higher standard of involvement from a proposed class representative than from an individual plaintiff. *Weatherly,* 905 S.W.2d at 652; *Manning,* 914 S.W.2d at 614. Counsel represented to the court that appellees had indicated their willingness to pursue the class action and had no conflicts or antagonism with the class, facts within the attorney's knowledge. *See Cooper,* 967 S.W.2d at 539. Snyder introduced no materials to the contrary. *Lopez,* 45 S.W.3d at 192. More-

---

**19.** Because counsel's representations regarding litigation experience support the trial court's adequacy-of-representation finding, we do not address whether we may consider the attorney resumes included in an appendix to appellees' brief.

over, even if the trial court had considered Snyder's summary judgment materials and even if it had agreed that the materials demonstrated the inadequacy of the proposed class representatives, in the face of contradictory evidence of adequacy the trial court would not have abused its discretion in concluding that the named plaintiffs were adequate representatives. *Manning,* 914 S.W.2d at 615.

Without substituting our judgment for that of the trial court, we find that the trial court's conclusion of law that appellees are adequate class representatives was not arbitrary, unreasonable, or without reference to any guiding principles. We find that the court applied correct legal standards and properly applied the law to the facts in reaching its decision. *See Lopez,* 45 S.W.3d at 186 (reciting abuse-of-discretion standards); *Tana Oil,* 978 S.W.2d at 741 (same). Accordingly, we hold that the trial court did not abuse its discretion in determining that appellees would fairly and adequately represent the interests of the class. We overrule appellant's fourth issue.

■ In sum, our review of the record and the certification order in this case indicates that the trial court conducted a thorough certification hearing in which it went beyond the parties' pleadings in order to understand the claims, defenses, relevant facts, and applicable substantive law of this case, then made a meaningful determination of the certification issues. The record before us indicates that the trial court conducted a rigorous analysis of all issues presented and arrived at a cautious decision in certifying the class. The

extensive and detailed certification order, findings of fact, and conclusions of law demonstrate that the trial court conducted a rigorous review of the information presented.[20] It determined that this case met the *Bernal* test of actual, rather than merely presumed, compliance with the requirements of rule 42. We find that the trial court acted within its discretion in making an informed, cautious, and proper decision that common issues predominated over individual issues; that it determined that all issues in this case could be considered in a class action in a manageable, time-efficient, and fair manner that would be superior to individual pursuit of these small, geographically scattered claims; and that it acted within its discretion in finding that the named plaintiffs and their counsel are adequate representatives. *Nat'l Western,* 86 S.W.3d at 303; *Cooper,* 967 S.W.2d at 539. We hold that the trial court did not abuse its discretion in certifying the class.

In its third issue, Snyder asserts that the trial plan does not permit consideration of its individual defenses.

## V. SNYDER'S CHALLENGE TO THE TRIAL PLAN

### A. Preservation of Error

■ Appellees argue on appeal that Snyder waived any complaint about the trial plan that the court included in the certification order by not objecting after entry of the order. Because Snyder opposed certification altogether, we agree with Snyder and hold that a post-ruling

20. Snyder complains throughout its briefing that the certification hearing was too brief and that the trial court signed unchanged a proposed certification order submitted by appellees. Snyder does not cite any authority or make any argument that either the brevity of a hearing or a trial court's adoption of a party's proposed order is error. Snyder has waived any complaint in that regard. Tex. R. App. P. 38.1(h); *Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994); *Columbia Rio Grande Regional Hosp. v. Stover,* 17 S.W.3d 387, 392 (Tex.App.-Corpus Christi 2000, no pet.).

objection to the trial plan was not necessary to preserve error. *See Barrier,* 40 S.W.3d at 156 (holding that a post-ruling objection to a modified class definition was not necessary to preserve error where the appellant had objected to certification itself).

## B. The Requirements of a Trial Plan

■ The supreme court in *Bernal* stated that "it is improper to certify a class without knowing how the claims can and will likely be tried," mandating that a court's certification order indicate how claims will be tried so that compliance with the requirements of class certification can be meaningfully evaluated. *Bernal,* 22 S.W.3d at 435. The certification order should identify the causes of action, how those causes of action would be tried, how liability for each defendant would be determined, and how damages for each of the plaintiffs would be determined. *W. Teleservices, Inc. v. Carney,* 37 S.W.3d 36, 42 (Tex.App.-San Antonio 2000, no pet.). The trial plan also must indicate a method for resolving individual issues. *Nissan Motor Co. v. Fry,* 27 S.W.3d 573, 592 (Tex.App.– Corpus Christi 2000, pet. denied).

## C. The Trial Plan Established in the Certification Order

"Because the issues in this case are common," the trial court found in its certification order, "the trial plan is relatively simple and can be accomplished by one jury in one trial." The trial plan identified the following steps:

1. The Plaintiff Class Representatives will present their individual cases.

2. Unless a directed verdict is appropriate at the close of Plaintiffs' case, their case will be presented to the jury for determination.

3. Plaintiffs' causes of action are for (1) breach of contract and (2) common law fraud and misrepresentation.

The elements of breach of contract cause of action are (1) the existence of a valid contract; (2) performance or tendered performance by Plaintiff; (3) breach of the contract by Defendant; and (4) damage to Plaintiff resulting from that breach.

The elements of fraud are a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.

4. The jury will be asked to determine whether the representations made by Defendant constitute common law fraud or misrepresentation. The jury will further be asked to determine the liability of Defendant and any individual defenses raised by Defendant. If there is a finding of liability and an award of actual damages, the jury will determine punitive damages, if any, as authorized by law.

5. If the jury returns a verdict against Plaintiffs, the trial will end and judgment against Plaintiffs and the class will be entered. If the jury finds for Plaintiffs, it is possible that the Court can render a judgment for the class based on the jury findings. If not, the trial will continue as to the class.

6. Because the breach of contract and representations to class members are virtually identical, proof of liability and damages can be established on a broad basis as to the class, using summaries to documents as permitted by the rules of evidence, expert opinion, or similar methods. A Master may also be used to review documents and determine damages based on a formula.

7. If the trial continues, the jury would also be asked to determine any

remaining issues relevant to the class and any classwide defenses raised by Defendant. The jury would also be asked to determine the actual damages for the remaining class members. The next phase will involve the jury's determination of punitive damages for the class members, as authorized by law.

8. Final judgment will be based on the jury verdict.

### D. Application of the Law to the Trial Plan

To summarize, the trial plan calls for a single jury to try this case in four phases. The first phase will determine liability and damages with regard to the named plaintiffs. The trial plan specifically provides for presentation of Snyder's individual defenses to the claims. The second phase will address punitive damages if the jury verdict from the first phase justifies such a submission, after which the plan provides for two alternatives: (1) the trial will end and judgment will be entered for the plaintiffs and the class; or (2) the trial will continue as to the class. In the event trial continues as to the class, the third phase calls for a determination of class-wide liability and damages, again with an opportunity for Snyder to present its class-wide defenses. The fourth phase would address punitive damages as to the class if required.

Snyder claims on appeal we must reject this trial plan because: (1) it negates commonality on its face by recognizing that judgment as to the class representatives may not be binding as to the class; (2) it unduly restricts Snyder from presenting viable defenses; and (3) it contains no proposed formula, expert opinion, or "similar methods" that a master will use to systematize analysis of class liability and damages. We disagree.

First, Snyder has cited no authority for its proposition that an alterna-tive trial plan as adopted by the trial court is error and so has waived that complaint. Tex.R.App. P. 38.1(h); *Fredonia State Bank*, 881 S.W.2d at 284; *Stover*, 17 S.W.3d at 392. In any event, a trial court may provide for alternative trial plans in acknowledgment of the difficulty inherent in determining with exactness in a class action's infancy how the case will develop. *Farmer's Ins. Exchange v. Leonard*, No. 03–01–00649–CV, —— S.W.3d ——, —— —— ——, 2002 WL 1994193, 2002 Tex.App. LEXIS 6294 at *34–*35 (Tex.App.-Austin, August 30, 2002, no pet. h.) (not yet released for publication in the permanent law reports). Second, the trial plan specifically provides for presentation of Snyder's defenses, both as to the named plaintiffs and as to the class. Third, Snyder again provides no authority to support its argument that the trial plan must detail the precise mechanism by which analyses of the claims will be systematized, and so Snyder has waived the complaint. Tex. R.App. P. 38.1(h); *Fredonia State Bank*, 881 S.W.2d at 284; *Stover*, 17 S.W.3d at 392. We note that the *MCI Telecommunications* court commented as follows with regard to the way the claims in that case could be expeditiously handled:

> [E]ach sale resulting in a miscalculated commission would not have to be examined. Rather, Smith could present adequate evidence indicating MCI's alleged pattern of action, the fact-finder could make its determination regarding MCI's liability, and the parties could then present the court with summaries of their positions on the issue of what MCI paid and what MCI actually owed. In sum, the damages allegedly suffered by the proposed class members were all of the same type, and the calculation of damages following a ruling in favor of the class would be a largely mechanical task.

*MCI Telecomm.*, 124 F.R.D. at 678. The trial plan here contemplates a similar process.

The trial court has broad discretion in managing this litigation. TEX R. CIV. P. 42(c)(1). Its efforts far exceed the "lick and a prayer" pilloried in *Schein,* where the trial court adopted no trial plan at all. *Schein,* —— S.W.3d at ——, 2002 WL 31426407, at *13. We cannot say that the trial court's characterization of its preliminary determinations concerning the management of these claims was arbitrary, unreasonable, or without reference to any guiding principles. *See Lopez,* 45 S.W.3d at 186 (reciting abuse-of-discretion standards); *Tana Oil,* 978 S.W.2d at 741 (same). We hold that the trial court did not abuse its discretion in devising the trial plan for this case. We overrule Snyder's third issue.

## VI. CONCLUSION

We affirm the trial court's order granting class certification and adopting a trial plan.