[No. 16476-1-II. Division Two. July 31, 1995.]

NORTHWEST INDEPENDENT FOREST MANUFACTURERS, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

708

*John E. Woodring, Joseph L. Coniff,* for appellant.
*Penny L. Allen, AG,* for respondent.

MORGAN, J. — Northwest Independent Forest Manufacturers (NIFM) appeals a Department of Labor and Industries (DLI) order that assessed an additional worker's compensation premium. We affirm.

We begin with the pertinent statutory scheme. A Washington employer or qualified group of employers has the option of fulfilling its workers' compensation responsibilities by enrolling in what DLI calls a retrospective rating program. *See* RCW 51.16.035. When an employer or group enrolls, it pays a standard industrial insurance premium for the ensuing "coverage year". At the end of the year, and at 12-month intervals thereafter, DLI calculates the retrospective premium for the coverage

year. It then compares that premium with the previous premium, and either grants a refund or imposes an assessment. Former WAC 296-17-904 to former WAC 296-17-919.[1]

The Washington Administrative Code sets forth the formula by which DLI is to calculate the retrospective premium. The formula provides that an employer's retrospective premium equals

(Basic Premium Ratio x Standard Premium)

+

(Loss Conversion Factor x Adjusted Incurred Losses)

Former WAC 296-17-914. The basic premium ratio, standard premium and loss conversion factor are not disputed here.[2] "Adjusted incurred losses" "equal incurred losses times the performance adjustment factor applicable to the coverage period". Former WAC 296-17-914; former WAC 296-17-904(11). Incurred losses are "the estimated ultimate cost to the accident fund . . . of claims arising from incidents occurring during the coverage period . . .". Former WAC 296-17-904(5). Incurred losses are "determined by multiplying the individual claim cost estimates by loss development factors, and adding the resulting developed losses for all the employer's claims". Former WAC 296-17-915; former WAC 296-17-904(5), (6). "The estimated cost of each claim shall include all payments made as of the valuation date and may also include a reserve for future payments . . .". Former WAC 296-17-915. Neither the performance adjustment factor nor the loss development factor are disputed here;[3] what is disputed is the proper cost of claims filed during the coverage year.

---

[1]All WACs cited in the text were those in effect in 1985-86.

[2]It appears undisputed that the basic premium ratio is zero, that the product of the first parenthetical is zero, and that the loss conversion factor is .666. *See* former WAC 296-17-91902.

[3]The performance adjustment factor is

an actuarially determined factor which is multiplied times incurred losses prior to application of the retrospective rating formula, to produce

With this scheme in mind, we turn to the facts. According to its brief, "NIFM is an association of independent employers in the forest products industry".[4] In mid-1985, it contracted, on behalf of 12 of its 18 members, to participate in DLI's retrospective rating program for the coverage year July 1985 through June 1986. *See* RCW 51.16.035; former WAC 296-17-904 to former WAC 296-17-919. The contract stated "the group hereby agrees to be bound by the provisions set forth in the Washington Administrative Codes for the enrolled coverage period". At the same time, former WAC 296-17-917 stated, "Employers associated with the group at any time during the term of the group retrospective rating plan agreement will remain parties to the group dividend agreement for the balance of its term".[5] Thus, the parties to the contract included NIFM's 12 participating members, as well as NIFM itself.

NIFM or its members apparently paid a standard premium of $1,488,305. See exhibit 5. After 12 months' experience, DLI refunded $253,000. After 24 months' experience, DLI refunded another $136,000. After 36 months' experience, DLI assessed an additional premium of $186,728. NIFM then quit the retrospective rating program.

The means by which DLI assessed the additional

---

"adjusted incurred losses". This adjustment will produce net retrospective premium credits for participating risks in the aggregate when they have combined experience which is more favorable than total state fund experience for the same coverage period. Conversely, this adjustment will produce net retrospective premium penalties for participating risks when their combined experience is more adverse than total state fund experience for the same coverage period. The purpose of the performance adjustment factor is to retain a consistent economic incentive for those employers to improve their accident cost experience while participating in these plans.

Former WAC 296-17-904(11). The loss development factor is an

actuarially determined factor which is multiplied times individual case basis estimates of claim costs to produce incurred losses for a firm or group of firms during a coverage period. Loss development factors allow for reopenings, aggravations and any other individually unpredictable contingencies which may affect claim costs based on past experience of the accident fund as a whole.

Former WAC 296-17-904(6).

[4]Br. of Appellant, at 21.

[5]The contract also contained a provision to this effect. See Ex. 17.

premium was an order dated December 27, 1989.[6] In February 1990, NIFM appealed that order to the Board of Industrial Insurance Appeals. *See* RCW 51.52.050-.060. After a four-day hearing, the presiding administrative law judge (ALJ) ruled "that the doctrine of res judicata precludes NIFM from obtaining any refund of premiums assessed on the basis of any amounts actually paid by the Department in administering claims".[7] In December 1991, the Board adopted the ALJ's ruling.

In January 1992, NIFM appealed to Thurston County Superior Court. *See* RCW 51.52.110, .115. In July of the same year, that court affirmed on the basis of collateral estoppel. NIFM then appealed to this court.

 NIFM had the burden of proof before both the Board and the superior court. RCW 51.52.050 provides, "In an appeal before the Board, the appellant has the burden of establishing a prima facie case for the relief sought". RCW 51.52.115 similarly provides, "In all court proceedings under or pursuant to [RCW 51], the findings and decision of the Board shall be prima facie correct and the burden of proof shall be upon the party attacking the same".

 NIFM having the burden of proof, it was entitled to prevail on a given claim only if it established each essential element thereof. NIFM says it was asserting claims based on statute, contract and tort. Assuming that is correct, a violation of statute is actionable only if the statute imposes a duty, the duty is breached, and the breach was a proximate cause of damage to the claimant. *Ward v. Zeugner*, 64 Wn.2d 570, 574-75, 392 P.2d 811 (1964). A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant. *Larson v. Union Inv. & Loan Co.*, 168 Wash. 5, 10 P.2d 557 (1932); *Alpine Indus., Inc. v. Gohl*, 30 Wn. App. 750, 637 P.2d 998 (1981), *review denied*, 97 Wn.2d 1013 (1982). Negligence is

---

[6]The December order corrected and superseded an order issued in May 1989.

[7]ALJ's Decision, BIIA Record, at 69.

actionable only if public policy imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant. *Pedroza v. Bryant*, 101 Wn.2d 226, 677 P.2d 166 (1984). It follows that NIFM had to establish duty, breach, causation and damage as to each of its claims.

We turn first to duty. NIFM asserted before the Board and the superior court that DLI had a duty to administer the retrospective rating program in accordance with recognized insurance principles. It asserts now that DLI's duty was statutory by virtue of RCW 51.16.035; contractual by virtue of the contract formed in June or July 1985; and existed in tort by virtue of *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 230, 797 P.2d 477 (1990) ("negligent performance of a contract may create a tort claim if a duty exists independently of the performance of the contract"). We assume, without so holding, that these assertions are correct, and that NIFM established duty.[8]

We turn next to breach. NIFM asserts that DLI breached its duty because it mismanaged claims filed during the coverage year. We assume, without so holding, that NIFM is correct, and that NIFM established breach.

■ We turn next to causation. To establish causation, NIFM had to show, among other things, that DLI's alleged breach (i.e., DLI's alleged mismanagement of claims) was a cause in fact of NIFM's alleged damages. *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985) (proximate cause includes cause in fact and legal cause). A cause in fact is a cause but for which the claimed damage would not have occurred. *Christen v. Lee*, 113 Wn.2d 479, 507, 780 P.2d 1307 (1989); *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 142, 727 P.2d 655 (1986).

Relying on collateral estoppel, DLI argues that NIFM is precluded from showing that it would not have incurred damage but for DLI's alleged mismanagement. It argues

---

[8]Our assumptions render immaterial NIFM's reliance on *Crown Zellerbach Corp. v. Department of Labor & Indus.* 98 Wn.2d 102, 108-09, 653 P.2d 626 (1982), and *Pacific Wire Works v. Department of Labor & Indus.*, 49 Wn. App. 229, 235, 742 P.2d 168 (1987).

(1) that each individual worker's claim was previously adjudicated to finality; (2) that those adjudications, viewed cumulatively, involved the same issue as the one NIFM now seeks to litigate; (3) that the employer involved in each of those adjudications was the same as or in privity with NIFM; and (4) that preclusion will not work an injustice.

■ ■ In general, the doctrine of collateral estoppel precludes further litigation of an issue when (1) the same issue was previously adjudicated on the merits ("identity of issues"); (2) the adjudication resulted in a final judgment ("finality"); (3) the party against whom preclusion is being asserted was a party to the prior adjudication or in privity with a party to the prior adjudication ("identity of parties"); and (4) preclusion will not work an injustice. *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987); *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983). The policy underlying the doctrine is that a claimant should be entitled to one, but not more than one, fair adjudication of an issue. *McDaniels*, 108 Wn.2d at 303; *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395-96, 429 P.2d 207 (1967); *see Lejeune v. Clallam County*, 64 Wn. App. 257, 266, 823 P.2d 1144, *review denied*, 119 Wn.2d 1005 (1992). The party invoking collateral estoppel has the burden of proving the facts needed to sustain it, *McDaniels*, 108 Wn.2d at 303-04; *State Farm Mut. Auto. Ins. Co. v. Amirpanahi*, 50 Wn. App. 869, 871, 751 P.2d 329 (1988), so DLI has the burden here.

■ We turn to the first of our four elements. The issue NIFM seeks to litigate is the cost of claims filed during the coverage year July 1985 to June 1986; it wants to show that cost was too high due to DLI's mismanagement. According to the statutory scheme described above, the cost of claims filed is the aggregate cost of individual claims filed during the pertinent coverage year, adjusted by certain statistical and actuarial factors. Thus, a portion of NIFM's cost of claims filed was litigated in each individual worker's claim, and the sum of the amounts awarded in such claims equals NIFM's cost of claims filed. The

need to add a column of figures represents the only difference between the issue NIFM now seeks to raise and the issues previously adjudicated, and we think the present and prior issues are the same for purposes of collateral estoppel.

NIFM does not contest the second element. It says it "is not challenging the validity of any individual claim orders entered by the Department",[9] and it "does not contend that specific individual time loss and disability awards are not final as to those claimants".[10]

On the third element, NIFM contends that the parties to the prior adjudications were not the same as, or in privity with, a party to the present case. Clearly, NIFM is a party here,[11] but was not a party to the prior proceedings involving individual claims. Equally clearly, an employer who was one of NIFM's participating members was a party to each of the prior proceedings. *See* RCW 51.52.050-.060 (employer entitled to notice; employer may appeal to Board); RCW 51.52.110 (employer may appeal to superior court). Thus, if NIFM and its participating employer/ members are in privity, there is identity of parties for purposes of collateral estoppel.

We hold that NIFM and its participating employer/ members are in privity. NIFM and its 12 participating members were all parties to the June 1985 contract with DLI. Additionally, NIFM was merely a conduit for any refunds or assessments to its members; thus, former WAC 296-17-917 stated:

> The payment of the group retrospective premium adjustment will be made to or collected from the association. The distribution to the individual group members or collection from the individual group members will be done by the association.

---

[9]Br. of Appellant, at 28,

[10]Br. of Appellant, at 19.

[11]No one assails NIFM's standing to bring this case, even though it is an unincorporated association.

Finally, NIFM and its 12 participating members had virtually identical interests with regard to individual claims filed during the coverage year July 1985 to June 1986, that interest being to reduce costs attributable to such claims. Under these circumstances, we think NIFM and its participating members were in privity with respect to those claims. *See Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1235-36, *cert. denied*, 434 U.S. 903, 54 L. Ed. 2d 190, 98 S. Ct. 300 (2d Cir. 1977) ("determination rendered against the association is binding on its members").

Incidentally, this view of privity is consistent with the rules of civil procedure. "Every action shall be prosecuted in the name of the real party in interest". CR 17(a). Usually, the real party in interest is "the person who, if successful, will be entitled to the fruits of the action". 3A Lewis H. Orland et al., *Wash. Practice*: CR 17, at 420 (1992). "General doctrine recognizes that there may be more than one real party in interest." *Id.* at 425. If all such parties do not join in the same action, a defendant can object, but the defect will be waived in the event the defendant fails to act promptly. *Id.* at 425. Here, NIFM's members were real parties in interest, for they were entitled to the fruits of any ruling that might award a refund or diminish an assessment, and NIFM was a mere conduit. *See* former WAC 296-17-917, quoted above. If the Department had objected to their nonjoinder, they would have been joined as plaintiffs pursuant to CR 17(a). They would then have been parties both to this case and to the prior adjudications of individual worker's claims, and privity or identity of parties would have been obvious.

NIFM next argues that the application of collateral estoppel would work an injustice, for it says that "[a]pplication of collateral estoppel has the effect of shielding [DLI] from NIFM's claims based on alleged failure to follow statutory and regulatory mandates applicable to a

written contract".[12] In our view, however, this argument is merely an assertion that it would be unjust not to allow NIFM to relitigate an issue (the cost of claims filed during the coverage year) that already has been litigated once. By law, this restriction is just rather than unjust, and the present argument fails.

We conclude that collateral estoppel precludes NIFM from showing a causal relationship between DLI's alleged mismanagement and NIFM's alleged damages, or, more specifically, between DLI's alleged mismanagement and "the cost of claims filed" that forms the basis for the disputed assessment of $186,728. It follows that NIFM cannot establish an element essential to each of its claims; that its ability or inability to establish other essential elements is immaterial; and that neither the Board nor the superior court erred in ruling as it did.

Affirmed.

Bridgewater, J., and Worswick, J. Pro Tem., concur.