

2014 JUL 28 AM 9: 31

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CHARLES MOMAH, | ) | NO. 69456-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON CASUALTY | ) | |
| COMPANY/BARBARA McCARTHY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: July 28, 2014 |
| | ) | |

LAU, J. — Charles Momah sued his liability insurer, Washington Casualty Company (WCC), for violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, insurance bad faith, and breach of contract. For the reasons discussed below, we affirm the summary judgment dismissal of Momah's suit, holding that (1) the applicable statutes of limitation bar his CPA and bad faith claims, (2) no material fact issue exists as to whether WCC breached a policy provision requiring it to obtain Momah's consent before settling third party civil suits, and (3) insufficient service of process on WCC vice president Barbara McCarthy warranted her dismissal from the lawsuit.

## FACTS

Over 30 patients sued former gynecologist Charles Momah for medical malpractice and sexual misconduct.[1] Momah's WCC professional liability insurance policy contained a consent provision stating, "[N]o settlement shall be made of any claim or suit without the agreement of the named insured [Momah]." (Capitalization omitted.)

Approximately six months before the first lawsuit was filed in September 2003, the superior court granted the Washington State Insurance Commissioner's petition to place WCC into receivership and rehabilitation.[2] The court appointed an assistant insurance commissioner as WCC's receiver. By court order and statute, the receiver took possession of all assets owned by WCC, including Momah's WCC insurance policy.

During the rehabilitation proceeding, WCC defended Momah's civil suits under a reservation of rights. After considering its potential exposure, the receiver decided to pursue a global settlement. WCC vice president of claims Barbara McCarthy and the receiver collaborated to implement the rehabilitation plan. McCarthy testified by declaration, "The number of allegations and severity of some of the claims put both WCC and Mr. Momah at significant financial peril."

---

[1] The Washington State Medical Quality Assurance Commission suspended Momah's license in September 2003.

[2] WCC's liabilities exceeded its assets. WCC reported a risk based capital mandatory control level event, and a majority of its board of directors consented to receivership under the insurance commissioner's supervision for purposes of receivership and rehabilitation.

In 2004, the State charged Momah with multiple sex crimes. During the criminal proceedings, WCC sought to mediate Momah's civil suits. McCarthy testified, "I was made aware before the mediation that Mr. Momah would not provide consent to settle the pending claims even though I had recommended to his counsel that such consent be given." Momah was apparently concerned that publicity surrounding the settlement would prejudice his defense in the ongoing criminal proceeding.

On the day the mediation commenced, Momah filed a complaint seeking an "[i]njunction preventing [WCC] from negotiating settlement of any claim on behalf of Dr. Momah and any other relief as the court may deem proper." The complaint, filed on October 21, 2005, alleged, "Dr. Momah has a reasonable basis for withholding consent to settlement in that the settlement of the civil cases will substantially prejudice his criminal defense and will also prejudice his defense in a pending administrative matter." The court entered a temporary order enjoining WCC from "entering into any settlement discussions or mediation" in the civil cases. Based on the order, WCC withdrew from the mediation. The order expired in November 2005. That same month, a jury convicted Momah of multiple sex crimes.

Following the convictions, 32 of Momah's civil suits settled. The receiver settled 30 cases in April or May 2006, during the rehabilitation proceeding. WCC settled the remaining cases in May 2007, after the rehabilitation proceeding terminated.[3]

---

[3] Our record shows that WCC settled civil suits filed by Michael Auraz and Jeannine LaPoint in May 2007. McCarthy testified by declaration, "All but two of the thirty-two cases WCC settled on Mr. Momah's behalf were settled in April or May 2006. The two remaining cases involved minors, which required the appointment of and approval by guardians ad litem. Court approval of the settlements in the two cases involving minors occurred in May 2007."

In January 2011, Momah sued WCC for breach of contract and violation of the CPA.[4] He failed to serve the summons and complaint.

In January 2012, the court granted Momah leave to file an amended complaint. Momah filed an amended complaint alleging violation of the CPA, insurance bad faith, and breach of contract. He named WCC and McCarthy as defendants. He alleged that WCC settled the civil suits without his consent and without adequate investigation. This time, he properly served WCC but failed to serve McCarthy.

On March 1, 2012, the trial court dismissed the CPA and bad faith claims based on the expiration of the respective statutes of limitation. The breach of contract claim remained. On May 30, 2012, the court summarily dismissed the breach of contract claim, ruling in part that WCC could not be liable for the settlement actions of the court-appointed receiver.[5] Momah appeals.

## ANALYSIS

Momah contends the trial court erred in dismissing his CPA and bad faith claims based on the expiration of the respective statutes of limitation. He also contends the court erroneously dismissed his breach of contract claim "simply because WCC was in receivership." Br. of Appellant at 3. For the reasons discussed below, we affirm.

On appeal from an order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

---

[4] Our record contains an incomplete copy of Momah's complaint.

[5] The court reserved ruling on the breach of contract claim involving a civil suit filed by Perla and Albert Saldivar. The court later dismissed this claim in its September 19, 2012 summary judgment order. Momah assigns no error to this order.

-4-

fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all facts and reasonable inferences in the light most favorable to Momah. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

CPA claims are subject to a four-year statute of limitations. RCW 19.86.120; O'Neill v. Farmers Ins. Co. of Wash., 124 Wn. App. 516, 530, 125 P.3d 134 (2004). Insurance bad faith claims are subject to a three-year statute of limitations. Moratti ex rel. Tarutis v. Farmers Ins. Co. of Wash., 162 Wn. App. 495, 502, 254 P.3d 939 (2011).

The parties do not dispute the following timeline of events:

| | |
|---|---|
| March 2003 | The rehabilitation proceeding commences. |
| September 2003 | Third parties begin to file civil suits against Momah. |
| April-May 2006 | The receiver settles 30 of Momah's civil suits. |
| October 2006 | The rehabilitation proceeding terminates. |
| May 2007 | WCC settles two more civil suits. |
| May 2010 | The three-year bad faith statute of limitations expires. |
| January 2011 | Momah sues WCC for breach of contract and violation of the CPA. Momah fails to serve the summons and complaint. WCC does not answer the complaint. |
| May 2011 | The four-year CPA statute of limitations expires. |
| December 2011 | WCC moves for summary judgment dismissal of Momah's January 2011 complaint. Momah files an amended complaint alleging breach of contract, violation of the CPA, and bad faith. He names WCC and McCarthy as defendants. |
| January 2012 | The trial court grants Momah leave to file his amended complaint. |
| March 2012 | The trial court dismisses Momah's CPA and bad faith claims based on the expiration of the statute of limitations. WCC |

moves for summary judgment dismissal of Momah's breach of contract claim.

May 2012     The trial court dismisses Momah's breach of contract claim.

Dismissal of CPA Claim

Momah filed his CPA claim in January 2011. The four-year statute of limitations expired in May 2011. Therefore, Momah filed his CPA claim within the statute of limitations. WCC nevertheless argues that Momah failed to perfect service within the limitations period. Momah responds that WCC waived its service-related defense because it engaged in inconsistent and dilatory behavior. We hold that the trial court properly dismissed Momah's CPA claim as time barred.

> Under the doctrine [of waiver], affirmative defenses such as insufficient service of process may, in certain circumstances, be considered to have been waived by a defendant as a matter of law. The waiver can occur in two ways. It can occur if the defendant's assertion of the defense is inconsistent with the defendant's previous behavior. It can also occur if the defendant's counsel has been dilatory in asserting the defense.

Lybbert v. Grant County, 141 Wn.2d 29, 38-39, 1 P.3d 1124 (2000) (citation omitted).

Momah relies on Lybbert, Romjue v. Fairchild, 60 Wn. App. 278, 803 P.2d 57 (1991), and King v. Snohomish County, 146 Wn.2d 420, 424, 47 P.3d 563 (2002). These cases are distinguishable. In Lybbert, the court held that the defendant waived its insufficient service defense because, for nine months prior to asserting the defense, it engaged in discovery unrelated to the defense and ignored an interrogatory asking whether it would be relying on the defense. In Romjue, the defendants waived their insufficient service defense because they propounded discovery requests unrelated to the defense and failed to respond to a letter from plaintiff's counsel stating, "'Please be advised that it is my understanding that the defendants have been served in the above

matter . . . .'" Romjue, 60 Wn. App. at 281 (emphasis omitted). Finally, in King, the court held that the defendant waived its service-related defense, which it asserted in a motion to dismiss just three days before trial, based on inconsistent prior behavior. The court noted that the defendant raised the defense in its answer but failed to clarify the defense in response to an interrogatory. It also noted that the parties engaged in 45 months of litigation and discovery, during which time the defendant sought four continuances and filed a motion for summary judgment that did not mention the defense. It concluded, "The [defendant's] assertion of a claim filing defense is inconsistent with its behavior for the four years prior to trial." King, 146 Wn.2d at 424.

Here, WCC engaged in no discovery prior to asserting its defense. Momah never attempted to confirm whether WCC planned to rely on the defense. And WCC never answered Momah's complaint. Finally, WCC raised the defense less than a year after Momah attempted service, in its first summary judgment motion. These facts are unlike those justifying waiver in Lybbert, Romjue, and King. Because WCC engaged in no actions consistent with waiver of its insufficient service defense, Momah's waiver claim fails as a matter of law.

Momah argues, without citing the record, that he sent WCC "numerous communications . . . including a request for production of documents." Br. of Appellant at 15. Even assuming the truth of this assertion, the issue is not whether Momah actively communicated with WCC or propounded discovery requests.[6] The issue is

---

[6] Momah claims he propounded a "set of interrogatories and [a] request for production of documents" and a "CR 26(i) request." Br. of Appellant at 7-8. He also claims "there was correspondence between WCC and [Momah] when he was

whether WCC responded to Momah's communications or discovery requests in a manner inconsistent with its present insufficient service defense. Momah cites nothing in the record establishing WCC's inconsistent or dilatory actions.

Dismissal of Bad Faith Claim

Momah concedes that he brought his bad faith claim after the three-year statute of limitations expired in May 2011. But he contends his disability by reason of incarceration tolled the limitations period under RCW 4.16.190. Under this tolling provision, the time a plaintiff spends "imprisoned on a criminal charge prior to sentencing" must be excluded from the "time limited for the commencement of action." RCW 4.16.190(1).

We need not review Momah's tolling claim, since our review of the record shows he failed to raise the claim below. We generally do not review issues raised for the first time on appeal. RAP 2.5(a).[7] In any event, the argument fails. The tolling provision's subsection (1) applies only to imprisonment "prior to sentencing." RCW 4.16.190(1). The burden to establish tolling under this statute rests on Momah. Rivas v. Overlake

---

attempting to obtain a copy of the insurance contract he had signed with WCC." Br. of Appellant at 9. Contrary to RAP 10.3(a)(6), he fails to cite the record.

[7] RAP 2.5(a) provides in part, "The appellate court may refuse to review any claim of error which was not raised in the trial court." As Division Three of this court recently observed, RAP 2.5(a) "reflects a policy of encouraging the efficient use of judicial resources and refusing to sanction a party's failure to point out an error that the trial court, if given the opportunity, might have been able to correct to avoid an appeal." In re Guardianship of Cornelius, ___ Wn. App. ___, 326 P.3d 718, 728 (2014).

Hosp. Med. Ctr., 164 Wn.2d 261, 267, 189 P.3d 753 (2008). Momah cites nothing in the record showing he was imprisoned prior to sentencing.[8]

Momah also argues that the bad faith claim survives because WCC waived the statute of limitations through the "dilatory activity" of its attorney. Br. of Appellant at 22. He cites no controlling authority and points to no record evidence supporting this claim. We are not persuaded that WCC waived the statute of limitations.

Dismissal of Breach of Contract Claim

Momah contends that WCC and its vice president, Barbara McCarthy, breached the insurance contract by settling civil suits without his consent. WCC acknowledges that "Momah's policy contained a consent provision, and the settlements were made over Momah's objection." Resp't's Br. at 1. But it argues that because the court-appointed receiver authorized and executed the settlements during the rehabilitation proceeding, only the receiver can be liable to Momah for breach of contract.[9]

Momah's policy contained the following consent clause:

> With respect to claims or suits brought within the United States . . . the company shall defend any suit against an insured containing allegations covered by this agreement and seeking damages on account thereof, even if such SUIT is groundless, false, or fraudulent, and the company may make such investigation it deems expedient; provided, however, no settlement shall be made of any claim or suit without the agreement of the named insured.

---

[8] Momah appears to argue that the tolling provision also applies to his CPA claim. To the extent he intended this argument, the claim fails for the reason discussed above—nothing in the record shows Momah was imprisoned "prior to sentencing." RCW 4.16.190(1).

[9] WCC argued below that Momah's breach of contract claim should be dismissed based on the expiration of the six-year statute of limitations. WCC appears to have abandoned this argument on appeal.

(Emphasis added.) (Capitalization omitted.) WCC acknowledges that Momah "adamantly refused" to settle any of the civil suits. Resp't's Br. at 5.

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus., 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

We agree with WCC that the record contains no facts establishing breach by WCC in connection with the receiver-authorized settlements. All third party civil suits against Momah commenced while WCC was participating in court-ordered rehabilitation. The rehabilitation order vested title and control of WCC's assets, including the policy Momah claims WCC breached, in the receiver.[10] It also authorized the receiver to conduct WCC's business and to "take such steps toward removal of the causes and conditions which have made rehabilitation necessary as the Court may approve . . . ."[11] It also prohibited WCC from "interfering with the Receiver's title, possession and use of any and all of the property of Washington Casualty; and from disposing of, removing, paying out, parting with, withdrawing, alienating or encumbering any of the assets or other property of Washington Casualty." The receiver undisputedly settled 30 suits during the rehabilitation proceeding.

---

[10] RCW 48.31.040(4) provides, "The order to rehabilitate the insurer by operation of law vests title to all assets of the insurer in the rehabilitator."

[11] RCW 48.31.040(1) provides, "An order to rehabilitate a domestic insurer shall direct the commissioner forthwith to take possession of the property of the insurer and to conduct the business thereof, and to take such steps toward removal of the causes and conditions which have made rehabilitation necessary as the court may direct."

Momah cites no evidence that WCC took any action with respect to the receiver-authorized settlements.[12] He thus cites no evidence of breach in connection with those settlements. The trial court properly granted WCC summary judgment on this issue.[13]

Momah argues that WCC incurred liability for the receiver's actions as the receiver's "successor." Br. of Appellant at 25. He relies on the doctrine of successor liability, under which a corporation that purchases another corporation's assets may, under defined circumstances, become liable for the selling corporation's debts. See Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp., 135 Wn.2d 894, 901, 959 P.2d 1052 (1998). Momah cites no controlling authority applying this doctrine to an insurer that has passed through statutory rehabilitation. We are not persuaded that the doctrine applies here. See Bert Kuty Revocable Living Trust ex rel. Nakano v. Mullen, 175 Wn. App. 292, 314, 306 P.3d 994 (2013) (application of successor liability doctrine presupposes a transfer, in some form, of assets from one business to another).

Momah also contends WCC breached the insurance policy by settling two cases in May 2007, after the rehabilitation proceeding ended. He argues that "the violations of May 2007 [are] unaffected by the WCC's argument regarding WCC's receivership status." Br. of Appellant at 26. On this claim, WCC offers no response. But we need not address the claim, since our review of the record shows Momah failed to raise the

---

[12] After deciding to pursue global settlement, the receiver directed, authorized, and supervised McCarthy's claims settlement efforts.

[13] Momah argues in his reply brief that "RCW 48.31.040 commands that the receiver involve the 'interested parties' in the decision making process and take into account their opinions and views before any decisions are made." We need not address this untimely argument. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

issue below. RAP 2.5(a). Momah acknowledges that the trial court "never considered that the May 2007 settlement occurred after the receivership ended." Br. of Appellant at 38. We deem this issue waived.

As stated above, Momah named McCarthy as an additional defendant in his amended complaint. It is undisputed that McCarthy was never properly served with process.[14] "A court does not have jurisdiction over a defendant who is not properly served." Oytan v. David-Oytan, 171 Wn. App. 781, 806, 288 P.3d 57 (2012). We conclude that the trial court properly dismissed Momah's claims against McCarthy.

## CONCLUSION

For the reasons discussed above, we affirm.

WE CONCUR:

_____

Cox, J.

_____

Becker, J.

---

[14] Momah argues in his reply brief, "The trial court found that service of process was adequate on WCC but not for Ms. McCarthy. At least three attempts [were made] to serve Ms. McCarthy by sheriff at her place of work. Dr. Momah contends that Ms. McCarthy was evading service of process." Reply Br. of Appellant at 3. We need not address this untimely argument. Cowiche Canyon, 118 Wn.2d at 809.