IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DARRELL RISTE, CATHY RISTE, TYLER RISTE, | ) ) ) | No. 35821-6-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| THE IDAHO LAW GROUP LLP, P. RICK TUHA P.C., P. RICK TUHA, HALA LILIFA AFU JR., HALA AFU and DOES 1-30, | ) ) ) ) ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — Darrell Riste, Cathy Riste, and Tyler Riste appeal the

trial court's summary judgment dismissal of their claims against their former attorneys.

We hold that the claims are barred by collateral estoppel. We affirm and award attorney

fee sanctions against appellants and their attorneys for pursuing a frivolous appeal.

No. 35821-6-III
*Riste v. Idaho Law Group*


FACTS

*Summary of Litigation*

This case is an appeal arising from the probate of Dan McAnally's estate after his

death on September 22, 2012. Darrell Riste is a beneficiary of the estate, and his wife and

son, Cathy Riste and Tyler Riste, are both contingent beneficiaries. The Ristes have

brought multiple lawsuits alleging that the distribution of the estate was mismanaged.

They have also filed several appeals following adverse rulings in these lawsuits.

The current appeal arises out of the Ristes' lawsuit against their former attorneys—

respondents Idaho Law Group LLP and P. Rick Tuha P.C., and the individual attorneys

P. Rick Tuha and Hala Lalifa Afu, Jr. (collectively the "Idaho Law Group"). In this

lawsuit, the Ristes claim that the Idaho Law Group is liable to them for pecuniary

damages resulting from malpractice, breach of contract, breach of fiduciary duties, and

for violating the Consumer Protection Act (CPA), chapter 19.86 RCW. In their CPA

claim, the Ristes assert that the Idaho Law Group's actions were fraudulent, and they

request damages, including punitive damages.

The Idaho Law Group filed a motion to dismiss. As part of its motion, the Idaho

Law Group included pleadings from two prior cases that ended with findings and

conclusions adverse to the Ristes. Because the trial court considered matters outside of

2

the complaint, it treated the motion to dismiss as one for summary judgment. *See*

CR 12(c). Ultimately, the trial court dismissed the Ristes' claims on the basis of

collateral estoppel. It is, therefore, necessary for us to discuss the prior cases.

In the first case, the Ristes filed objections to the closing of the McAnally estate.

They generally claimed that the personal representative (PR) and its attorneys violated

fiduciary duties owed to them and that the PR should be removed. The trial court denied

the Ristes their requested relief. In an unpublished opinion, we affirmed the trial court.

*In re Estate of McAnally*, No. 35054-1-III (Wash. Ct. App. May 3, 2018) (unpublished),

http://www.courts.wa.gov/opinions/pdf/350541_unp.pdf, *review denied*, 191 Wn.2d

1019, 428 P.3d 1189 (2018). We will refer to this matter as the "Probate Matter."

In the second case, the Ristes sued numerous defendants including the PR and its

attorneys. We will refer to that matter as the "Fiduciary Matter." Largely relying on the

findings and conclusions from the Probate Matter, the trial court summarily dismissed

those claims. The Fiduciary Matter has been appealed to this court. *Riste v. Pers.*

*Representative of Estate of McAnally*, Wash. Ct. App. 35681-7-III.

*Background Facts*[1]

Dan McAnally died testate on September 22, 2012. His will was admitted to probate. The nominal PR, Baker Boyer Bank, was appointed personal representative, bond was waived, and nonintervention powers were granted.

On February 25, 2014, the PR filed a "Petition for Order Determining Amount of Pecuniary Requests." The PR provided proper notice to the Ristes and their attorneys, Idaho Law Group, and set the hearing for March 21, 2014. At the hearing, the trial court entered an order determining the amount of the pecuniary requests. On May 9, 2014, Darrell Riste executed a receipt acknowledging that he had received his distributive share.

On June 5, 2014, the PR filed a "Petition for Order for Authorizing Sale of Real Estate Property." The property owned by the estate included the Viking Village Shopping Center, located in Selah, Washington (hereinafter the "Viking Village"). The PR noted the petition to be heard on July 8, 2014. Notice was provided to the Ristes by certified mail and to the Ristes' attorneys. No objections were filed, and Judge Susan Hahn entered an order authorizing the sale of Viking Village.

---

[1] Our statement of the background facts comes from Judge Kevin Naught's January 26, 2017 decision in the Probate Matter. *See* Clerk's Papers (CP) at 319 ("This letter and the enclosed interlineated Findings of Fact and Conclusions of Law constitute my decision in this matter.").

There was no court activity in this matter for the next two years.  On September 6,

2016, the Ristes filed a "Notice of Motion and Motion to Recuse Judge Hahn; to Remove

the Personal Representative of the Estate of Dan McAnally and the Trustee of the Riste

Trust for Conflict of Interest and Breach of Fiduciary Duties; For and [sic] Order

Requiring the Personal Representative to File an Accounting; Denial of Fiduciary and

Attorney's Fees; and for Pendente Lite Orders Freezing Assets and Appointing a

Successor Fiduciary."  These motions were filed by the Ristes' replacement attorney.[2]

The Ristes sought Judge Hahn's disqualification and stated:

> "It is imperative to the Court and to the Petitioner that recusal of Judge
> Hahn be granted so as to prevent any further judicial impropriety.  Judge
> Hahn, whether negligently or in an otherwise improper manner authorized
> the sale of the SHOPPING CENTER and Property based on a horrendous
> interpretation of the Revised Washington Code and/or the express terms of
> the WILL.  The error is so egregious that it suggests incompetence.  Judge
> Hahn's diligence and impartiality will be called into question in this motion
> to remove the PR/TRUSTEE and the impending civil complaint."

CP at 320 (footnote omitted).

---

[2] In its decision of the Probate Matter, Judge Naught referred to the opposing party
as "Mr. Riste."  We note that the signature lines for the Idaho Law Group, and later the
replacement attorneys, all show that they represented "Darrell Riste, Cathy Riste, and
Tyler Riste."  We therefore refer to the party opposing the PR and its attorneys as "the
Ristes."

The Ristes stated that the PR and Trustee should be removed for good cause

alleging over 14 fiduciary violations.  As such, the Ristes requested an accounting and the

denial of fees for the PR and its attorneys.  In support of their petition, the Ristes filed

eight exhibits attached to the petition and a separate affidavit.  Exhibits to the petition

contained 16 letters or e-mails between the parties and the attorneys from February 7,

2013 to March 5, 2016.

On September 8, 2016, the PR filed a declaration of completion of probate.  A

week later, the Ristes filed a petition for an accounting and objected to the reasonableness

of the PR's and its attorneys' fees and expenses.  The Ristes noted a hearing for

November 18, 2016.  The court heard argument and issued its letter decision two months

later.  Because collateral estoppel was the basis for the trial court's dismissal, it is

necessary for us to quote extensively from the trial court's findings and conclusions in its

letter decision:

> Issue #1—Sale of Shopping Center
>
> Many of Mr. Riste's objections concern the sale of the Shopping Center.
> Mr. Riste wanted the Estate/Trust to retain the Shopping Center as he
> believed it would produce more annual income than a liquid financial
> investment and he was to personally receive the annual income from the
> Trust.  The P.R. sought to sell the Shopping Center in order to have a more
> diverse trust estate.  This was the subject of much discussion between the
> parties.  The P.R. petitioned the court for authority to sell the Shopping
> Center.  No one filed any objections, apparently no one objected at the

hearing and the Court (Judge Hahn) authorized the sale. There was no Motion for Reconsideration. Now, 26 months after the Order Authorizing Sale was entered, Mr. Riste's makes objections. His objections are untimely.

Mr. Riste's opportunity to object to the sale, or to object to the conduct of the P.R. relating to the sale, was in July 2014. If Mr. Riste felt that he did not have enough information to form an objection, he could, at a minimum, have sought a continuance. Mr. Riste ultimately agreed to have it sold at $1,100,000.00.

Mr. Riste challenges the validity of the Trust. He maintains that no will can create a trust, but that all trusts must be created by a document separate from the will. He cites RCW 11.25.250. His reliance is misplaced. "There are four elements required to create a testamentary trust: (1) a will evidencing testamentary intent to create a trust, (2) designation of the trust corpus, (3) designation of beneficiaries, and (4) specification of the terms of the trust." All of these elements are present in Decedent's Will, so the Trust is valid.

Mr. Riste also challenges the P.R.'s right to sell the property by citing RCW 11.04.250. Mr. Riste's interpretation is too narrow and is rejected by RCW 11.68.090 which gives a personal representative with non-intervention power to sell real property without court approval.

The P.R. had non-intervention powers. The Shopping Center was not a specific devise. Instead, it passed through the general residual clause of the Will. Thus, the P.R. had the authority to sell the asset. The Trust does not fail because it is a testamentary trust and no separate document is needed. The P.R. gave notice of the hearing. The P.R. provided a rational basis for the sale in that it wanted to diversify the Trust estate. The P.R. obtained an appraisal to determine the value of the property. There were no objections. There was no violation of any fiduciary duty. There was no conflict of interest.

7

Issue #2—TEDRA Matter Regarding "Funds on Deposit"

Mr. Riste's objects to the P.R.'s "Petition for Order Re Bequests" on the grounds that it was unnecessary and, thus, incurred unnecessary fees. There was $442,499.97 in a money market account at Baker Boyer Bank upon Decedent's death. The Will had several specific bequests. Two of these bequests were similar in nature in that Darrel Riste and Fred Wickholm were each to receive 30% of "all bank accounts and other bank deposits standing in my name at the time of my death" with the remaining 40% being a part of the residual estate. This meant that if the money market accounts were "bank deposits," $265,499.98 would pass as specific bequests. If the money market accounts were not "bank deposits," the $265,499.98 would pass to the residual estate which was the Trust. Darrell Riste's grandchildren, Kyler Riste and Gracie Riste, hold remainder interests in the Trust. Because they are minors, a Guardian ad Litem was appointed for them. University of Denver is a contingent remainder beneficiary of the Trust. Not surprisingly, Fred Wickholm and Darrell Riste did not object to the P.R. classifying the money market accounts as bank deposits.

It was neither frivolous nor a breach of fiduciary duty for the P.R. to seek to prevent any future litigation by asking the Court to review this issue. The P.R.'s action brought stability to both the Estate and Trust by foreclosing any possible future claim that the money market accounts were not bank deposits.

Issue #3—Information Flow

Mr. Riste sought the P.R.'s removal and sought to have the P.R. (and its agents) not be paid as Mr. Riste claimed the P.R. (or its agents) breached its fiduciary duty by providing false or misleading information, or by simply not providing any information at all.

There is no credible evidence in the record that the P.R. or its agents provided false or misleading information. It does appear, however, that Mr. Riste did not receive all of the information he requested.

An heir's right to information from a personal representative in a non-intervention estate is limited.  It is not a breach of a fiduciary duty if a personal representative in a non-intervention estate does not provide heirs with financial information, estate records, valuation of the estate, and information relating to estate property during probate unless ordered to do so by the Court.  Mr. Riste requested information pursuant to RCW 11.76.010.  However, that section is not applicable in non-intervention estates.  Mr. Riste never sought a court order via RCW 11.68.065 which would have then compelled the P.R. to provide timely information.

Mr. Riste asked, in writing, for a copy of the Inventory and Appraisement at least three times with the earliest request on or about February 7, 2013.  A copy was provided to him on May 6, 2014.  The statute required that the Inventory and Appraisement be completed by December 5, 2012, and that a copy be given to any heir within 10 days of the personal representative's receipt of the request.  There is no explanation why the P.R. waited approximately 15 months to respond to Mr. Riste's request.  The issue before this court is whether this delay rises to the level of being deemed a breach of fiduciary duty.

The statute makes failures such as this a basis to revoke letters testamentary and imposition of terms against the personal representative.  However, this is discretionary.  When I weigh this failure against several factors, I find that it does not rise to the level of a breach of fiduciary duty.  These factors are: the P.R. did finally provide Mr. Riste with a copy, Mr. Riste never sought Court action against the P.R. pursuant to RCW 11.44.050, Mr. Riste did not object to the late delivery to the Court until months after the fact, Mr. Riste did not challenge the validity of the information contained in the Inventory and Appraisement and Mr. Riste did not show that the late delivery harmed him.

In his Petition #1, Mr. Riste provided copies of letters and emails.  These show that the P.R. and/or its attorney responded to most of Mr. Riste's inquiries although the level of detail and [sic] may not have been as great as Mr. Riste expected.  Additionally, as of July 2, 2014, the P.R. arranged for

9

Mr. Riste to have electronic access to the monthly statement concerning the financial accounts managed by the Trustee.

Issue #4—Professional Fees

Mr. Riste objected to the payment of professional fees to the P.R. and its attorney based upon alleged breach of fiduciary duties and reasonableness. Having found no breach of fiduciary duty, I focus on the reasonableness of the fees.

A personal representative and its attorney are entitled to be compensated. "In fixing the amount of such fee, the court is to consider: the amount and nature of the services rendered, the time required in performing them, the diligence with which they have been executed, the value of the estate, the novelty and difficulty of the legal questions involved, the skill and training required in handling them, the good faith in which the various legal steps in connection with the administration were taken, and all other matters which would aid the court in arriving at a fair and just allowance."

Mr. Velikanje provided a fee affidavit which showed the activity, time, and fee for each entry. Mr. Riste provided no specific objection or contrary evidence. I have reviewed the time/fee entries against the factors listed above and find the attorneys' fees and costs to be reasonable. Of note is that the estate was inventoried at $2,642,936 and that it involved the sale of commercial property that had issues of environmental contamination.

The P.R. charged a fee according to its published fee schedule. Mr. Riste provided no specific objection or contrary evidence. The Estate Fee Schedule is reasonable.

CP at 321-24 (footnotes omitted).

*Dismissal of the Ristes' lawsuit against Idaho Law Group*

The trial court noted that the Ristes' complaint in the present action asserted they were harmed because the Idaho Law Group failed to prevent the sale of the Viking Village and failed to raise the arguments unsuccessfully raised by replacement counsel. The trial court listed the Ristes' various causes of action as (1) legal malpractice, (2) breach of fiduciary duty, (3) breach of contract, (4) violation of the CPA, (5) fraud, and (6) punitive damages. The trial court analyzed the elements of each cause of action and noted that each cause of action required the Ristes to establish that the Idaho Law Group acted or failed to act in a manner that caused them harm. The trial court concluded that the Idaho Law Group could not have stopped the sale of the Viking Village. The trial court also concluded that the Idaho Law Group, by failing to raise the same unsuccessful argument raised by replacement counsel, did not cause the Ristes any harm. For the most part, these were the reasons the trial court dismissed the Ristes' claims against their former attorneys.

The Ristes appealed.

11

ANALYSIS

We review a summary judgment order de novo, considering the evidence and
reasonable inferences from the evidence in the light most favorable to the nonmoving
party. *Keck v. Collins*, 181 Wn. App. 67, 78-79, 325 P.3d 306 (2014), *aff'd*, 184 Wn.2d
358, 357 P.3d 1080 (2015). Summary judgment is proper if the records on file with the
trial court show there is no genuine issue of material fact and the moving party is entitled
to a judgment as a matter of law. *Id.*; CR 56(c).

Initially, the burden is on the party moving for summary judgment to prove by
uncontroverted facts that there is no genuine issue of material fact. *Seattle Police
Officers Guild v. City of Seattle*, 151 Wn.2d 823, 848, 92 P.3d 243 (2004). Once the
moving party meets this burden, the burden shifts to the nonmoving party to set forth
specific facts showing a genuine issue of material fact exists warranting a trial. CR 56(e);
*Heath v. Uraga*, 106 Wn. App. 506, 513, 24 P.3d 413 (2001).

A.     CLAIMS DISMISSED ON THE BASIS OF COLLATERAL ESTOPPEL

The Ristes argue that the trial court erred by granting summary judgment in favor
of the Idaho Law Group. They claim that the present lawsuit raises issues that are not
identical to the Probate Matter. We disagree.

"Whether collateral estoppel applies to bar relitigation of an issue is reviewed de novo." *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Collateral estoppel prevents a second litigation of an issue even though a different claim or cause of action is asserted. *Id.* at 306. The doctrine promotes judicial economy and serves to prevent inconvenience or harassment of parties. *Id.*

Collateral estoppel may be applied to preclude only those issues that have been actually litigated and necessarily and finally determined in the earlier proceeding. *Id.* at 307. The party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Id.*

The party asserting collateral estoppel must show (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was the party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Id.*

Various issues previously litigated are dispositive of the Ristes' claims in the present action. The first issue concerns the sale of Viking Village. The trial court concluded that because the PR had nonintervention powers, it was allowed to sell Viking

13

Village, even without court approval. The second issue is the PR's and its attorneys'

performance of their duties. The court concluded that neither the PR nor its attorneys

breached fiduciary duties. It reasoned that the PR's desire to diversify the trust was a

rational basis for selling Viking Village. The third issue concerns the reasonableness of

the PR's and its attorneys' fees and expenses. The trial court approved the PR's and its

attorneys' fees and expenses after concluding they were reasonable.

With respect to these issues, collateral estoppel is satisfied. First, these issues were

litigated and necessarily decided in the Probate Matter. Second, the Probate Matter ended

in a judgment on the merits. Third, all three of the Ristes participated in the litigation.

Although Mr. Riste was the only family member who actively participated, the other two

family members were represented by counsel and had a right to participate.

Fourth, application of collateral estoppel does not work an injustice against the

Ristes. The "injustice element" of collateral estoppel "is rooted in procedural unfairness.

'Washington courts look to whether the parties to the earlier proceeding received a full

and fair hearing on the issue in question.'" *Schibel v. Eymann*, 189 Wn.2d 93, 102, 399

P.3d 1129 (2017) (internal quotation marks omitted) (quoting *Thompson v. Dep't of

Licensing*, 138 Wn.2d 783, 795-96, 982 P.2d 601 (1999)). The Ristes were heard loud

and clear in the Probate Matter. Their attorneys filed extensive motions and documents.

14

They vigorously argued at the trial court and on appeal. They received a full and fair hearing.

### 1.       Legal malpractice

The Ristes contend that they presented a genuine issue of material fact that the Idaho Law Group's actions or inactions caused them pecuniary harm.

To establish a claim of legal malpractice, the plaintiff must prove the following elements: (1) the existence of an attorney-client relationship that gives rise to a duty of care owed to the client by the attorney, (2) an act or omission by the attorney in breach of the duty of care, (3) damage to the client, and (4) proximate causation between the attorney's breach of the duty and the damage incurred. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). To recover, the plaintiff must show that he or she would have achieved a better result had the attorney not been negligent. *VersusLaw, Inc. v. Stoel Rives, LLP*, 127 Wn. App. 309, 328, 111 P.3d 866 (2005).

Here, the Ristes cannot establish that any breach caused them any harm. In the Probate Matter, the trial court concluded that the Ristes had no right to prevent or delay the sale of Viking Village. The Ristes' replacement attorneys argued the sale should not have been approved, but the court rejected the argument. The Ristes' replacement attorneys also argued that the PR and its attorneys breached their fiduciary duties. The

15

court similarly rejected this argument.  The Ristes' replacement attorneys also argued that

the fees and expenses of the PR and its attorneys should not be approved and were not

reasonable.  Again, the court rejected these arguments.

No reasonable trier of fact could find that the same arguments made by a different

lawyer would have achieved a different result.  The Ristes have failed to establish the

causation element of their legal malpractice claim.  The trial court did not err in granting

summary judgment dismissal of this claim.

### 2.     Breach of fiduciary duty

The Ristes argue that the trial court erred in dismissing their breach of fiduciary

duty claim.  To prevail on a breach of fiduciary duty claim, a plaintiff must prove (1) the

existence of a duty owed, (2) a breach of that duty, (3) resulting injury, and (4) that the

claimed breach proximately caused the injury.  *Micro Enhancement Int'l, Inc. v. Coopers

& Lybrand, LLP*, 110 Wn. App. 412, 433-34, 40 P.3d 1206 (2002).  Similar to our above

comments, the breach of fiduciary duty claim fails for lack of causation.

### 3.     Breach of contract

The Ristes argue that the trial court erred in dismissing their breach of contract

claim.  To prove breach of contract, the plaintiff must prove that a valid agreement

existed between the parties, the agreement was breached, and the breach caused damages

16

to the plaintiff. *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467, 404 P.3d 559 (2017); *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712-13, 899 P.2d 6 (1995). As with the legal malpractice and the breach of fiduciary duty claims, the Ristes have failed to establish a genuine issue of material fact as to causation. As discussed above, the Ristes cannot establish that the Idaho Law Group could have prevented the sale of Viking Village or that any actions or inactions by the Idaho Law Group damaged them. For these reasons, the trial court properly dismissed the Ristes' breach of contract claim.

B.      CPA AND FRAUD CLAIMS[3]

To prevail on a private CPA claim, plaintiffs must establish the following elements: (1) that the defendant engaged in an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to plaintiffs in their business or property, and (5) causation. *Univ. of Wash.*, 200 Wn. App. at 467.

While the Ristes did not bring a fraud claim, their CPA claim relies on allegations of fraud. They claim fraud and deception, but provide no details or specifics of what the Idaho Law Group did or did not do that was fraudulent or deceptive. Beyond the claims

---

[3] On appeal, the Ristes clarify that their claim for punitive damages is based on the availability of treble damages under the CPA.

17

made and dismissed above, the Ristes fail to assert any action or inaction by the Idaho

Law Group that caused damages to them. To the extent we can discern any substance to

their CPA claim, it is that Idaho Law Group was fraudulent or deceptive for not pursuing

the same unsuccessful arguments their replacement attorneys made. The Ristes cannot

show how they were damaged by the Idaho Law Group's failure to make unsuccessful

arguments. The trial court did not err in summarily dismissing these claims.

C.    ATTORNEY FEES

The Idaho Law Group seeks an award of attorney fees under RAP 18.9 for

defending an appeal that is frivolous. RAP 18.9 permits an appellate court to order a

party or counsel who files a frivolous appeal to pay the harmed party compensatory

damages, including reasonable attorney fees. Under Washington law, "an appeal is

frivolous if, considering the entire record and resolving all doubts in favor of the

appellant, the court is convinced that the appeal presents no debatable issues upon which

reasonable minds might differ, and that it is so devoid of merit that there is no possibility

of reversal." *Ramirez v. Dimond*, 70 Wn. App. 729, 734, 855 P.2d 338 (1993). When

considering awarding fees, all doubts regarding frivolity are resolved in favor of the

appellant. *Camer v. Seattle Sch. Dist. No. 1*, 52 Wn. App. 531, 540, 762 P.2d 356 (1988).

Even given this liberal standard, we conclude this appeal is so devoid of merit that there

was no possibility of reversal. Here, the Ristes' replacement attorneys lost on these and similar arguments not once, not twice, but at least three times. In essence, this lawsuit sought to recover damages against their former attorneys for *not* making losing arguments.

Subject to the Idaho Law Group's compliance with RAP 18.1(d), we award the Idaho Law Group its reasonable attorney fees against the Ristes and their counsel, jointly and severally.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.